Case 3:01-cv-02166-JCH    Document 38-2    Filed 12/08/2003    Page 1 of 15

2001 U.S. Dist. LEXIS 19919, *                                              Page 5

motions papers filed on April 17, 2001 as withdrawn, and the proposed amended complaint accompanying plaintiff's reply papers filed on May 25, 2001 as the operative proposed pleading. Giving the genealogy of these pleadings, I will refer to the pleading presently proposed as the Third Amended Complaint ("TAC"). The Second Amended Complaint ("SAC") accompanied plaintiff's pro se motion to amend filed on December 12, 1995. The Amended Complaint ("AC") was filed by plaintiff pro se on March 20, 1995, pursuant to the leave granted her by Chief Judge Griesa's order.

## II. THE PROPOSED THIRD AMENDED COMPLAINT

The TAC, in the form accompanying plaintiff's reply papers, alleges generally that the defendants, acting under color of state law, violated rights guaranteed to plaintiff "by the fourteenth amendment to the Constitution of the United States, The New York State Constitution, and the laws of the State of New York." TAC P 1. Subject matter jurisdiction is accordingly based upon 42 U.S.C. § 1983 and, with respect to the [*7] state law claims, upon supplemental jurisdiction conferred by 28 U.S.C. § 1367.

The TAC contains nine claims which may be summarized as follows.

First Claim: that HHC had a policy, practice or custom of involuntarily admitting patients in violation of the 14th Amendment to the United States Constitution, and violated plaintiff's due process rights by involuntarily admitting her to Jacobi. TAC PP 67-69.

Second Claim: that HHC had a policy, practice or custom, "in violation of the Constitution of the United States," of placing involuntarily admitted patients in bed restraints against their will, and violated plaintiff's due process rights "by causing or permitting her to be restrained sadistically and against her will." TAC PP 72-74.

Third Claim: that HHC had a policy, practice or custom, "in violation of the Constitution" of medicating patients against their will, and violated plaintiff's due process rights by causing or permitting her to be medicated against her will. TAC PP 77-79.

Fourth Claim: that defendants Greene, Hunzicker, Lanigan, Griffiths, and all three John Doe defendants, by acting individually and in concert, violated plaintiff's "constitutional [*8] rights by causing her to remain in Jacobi against her will." TAC PP 82-83.

Fifth Claim: that all the individual defendants, "in violation of the Constitution of the United States," caused or permitted plaintiff to be medicated against her will. TAC PP 86-87.

Sixth Claim: that defendants Greene, Hunzicker, Griffiths, and Lanigan unlawfully and without justification caused plaintiff to be placed in bed restraints. TAC PP 90-91.

Seventh Claim: that "defendants" (names not specified) violated plaintiff's rights "under the New York Constitution" by medicating her against her will and without justification. TAC PP 94-95.

Eighth Claim: that defendants Hunzicker, Greene, and Schuetz-Mueller acted "grossly negligently" by the actions they took with respect to plaintiff, failed to exercise reasonable care or sound judgment, and committed medical malpractice against plaintiff "insofar that the acts complained violated the norms of acceptable medical care." TAC PP 98-100.

Ninth Claim: that as the result of plaintiff being forcibly detained and subjected to a false diagnosis and wrongful treatment, the "defendants" (unspecified) created a written record about plaintiff "that is false and embarrassing" [*9] to plaintiff and "will continue to have the effect of stigmatizing plaintiff." TAC PP 103-105.

The TAC, in its prayer for relief, demands compensatory and punitive damages for plaintiff on the first eight claims. With respect to the Ninth Claim, the TAC prays for "a permanent injunction to have her medical records which pertain to any reference to any mental illness expunged."

## III. DISCUSSION

A. The Governing Law

[HN1] Rule 15 provides for amended and supplemental pleadings. In the circumstances of this case, plaintiff must obtain leave of Court to further amend her complaint. The governing principles are well established. [HN2] Rule 15(a) explicitly provides that "leave shall be freely given when justice so requires." But a district court's permission to amend a pleading is not automatic. "Although leave to amend shall be freely granted when justice requires, valid reasons for denying leave to amend include undue delay, bad faith, or futility of the amendment." Mackensworth v. S.S. American Merchant, 28 F.3d 246, 251 (2d Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

[HN3] Courts will not grant leave to [*10] amend "when the proposed amendment is legally insufficient and it would be futile to grant leave to amend." 3 Moore's Federal Practice (3d ed. 1997) § 15.15[3] at 15-48. A proposed amended complaint is futile in that sense if (1) the claim it seeks to assert is barred by the applicable statue of limitations, and (2) the claim does

Case 3:01-cv-02166-JCH   Document 38-2   Filed 12/08/2003   Page 2 of 15

2001 U.S. Dist. LEXIS 19919, *                                              Page 6

not relate back to the date of an earlier timely pleading. Mackensworth 28 F.3d at 251-52.

In the case at bar, defendants contend that amending the complaint to assert Claims First through Sixth would be futile because all these claims are barred by the statute of limitations. These claims all arise under 42 U.S.C. § 1983. Defendants correctly contend that the applicable statute of limitations, derived from New York law, is three years. See [HN4] N.Y. CPLR § 214(5) (three-year limitation period in actions for personal injury). Plaintiff does not dispute the point. The incidents in suit having occurred in February and March 1993, the proposed TAC is time-barred unless it relates back to an earlier, timely complaint.

[HN5] The relation back of amendments is governed by Rule 15(c), which provides in pertinent part that [*11] "an amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."

> A leading treatise states:
> [HN6]
> The purpose of the statute of limitations is to prevent stale claims. The rationale of allowing an amendment to relate back is that once a party is notified of litigation involving a specific factual occurrence, the party has received all the notice and protection that the statute of limitations requires. Courts should freely grant leave to amend under Rule 15 to effectuate the purpose of the Rules."

3 Moore's Federal Practice (3d ed. 1997) § 15.9[1] at 15-79 (footnotes omitted). More than half a century ago the Second Circuit held that " [HN7] Rule 15(c) was to be liberally construed, particularly where an amendment does not allege a new cause of action but merely makes defective allegations more definite and precise." Glint Factors, Inc. v. Schnapp, 126 F.2d 207, 209 (2d Cir. 1942) (internal quotation, ellipses and bracketed alteration omitted).

[HN8] Notwithstanding [*12] the liberality with which courts allow relation back under Rule 15(c), a proposed amended complaint cannot relate back to an earlier pleading if it is quite clear that the claim it asserts does not arise out of "the conduct, transaction or occurrence set forth . . . in the original pleading." Such a circumstance is illustrated by Mackensworth, 28 F.3d 246, upon which the defendants at bar place a wholly unjustified reliance.

In Mackensworth the plaintiff seaman filed a timely personal injury action against his employer and the vessel on which he served, alleging "injuries to his back as a result of work he performed on June 13, 1981" on board the vessel. 28 F.3d at 248. Subsequently, in 1989, plaintiff filed an additional pleading which, the Second Circuit said, the district court properly treated "as a motion to amend" the original complaint. Id. at 249. In that new pleading, plaintiff sought to assert against the same vessel a claim for "alleged respiratory injuries he sustained on December 31, 1982, while employed by" the same company. Id. The district court refused to allow the amendment. The Second Circuit affirmed, stating: [*13] "Given that Mackensworth admits the respiratory injury manifested itself by December 31, 1982, his claim is barred by the three-year statute of limitations" found in the governing statute. Id. Moreover, the new pleading did not relate back under Rule 15(c), since "Mackensworth's original claim involved a 1981 back injury, while the latter claim involved a respiratory injury that manifested itself in December of 1982." Id. at 252.

In Mackensworth the Second Circuit distinguished its earlier opinion in Siegel v. Converters Transportation, Inc., 714 F.2d 213 (2d Cir. 1983), which noted that the overall purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities" (citation omitted). In Siegel the Second Circuit noted that the overall purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities" (citation omitted), and went on to state:

> There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to [*14] enforce a claim against it because of the events alleged in the original complaint. . . . When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted by amendment if need be."

Id. at 216 (citations and internal quotation marks omitted). More recently, the Second Circuit has said: " [HN9] Under Fed.R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. Here, the facts alleged in the original complaint clearly put Alias and Bingham on notice as to the conduct and transactions at issue in this action." Stevelman v. Alias Research Inc., 174 F.3d 79, 86-87 (2d Cir. 1999) (Newman, J.).

Case 3:01-cv-02166-JCH   Document 38-2   Filed 12/08/2003   Page 3 of 15

2001 U.S. Dist. LEXIS 19919, *                                           Page 7

Consistent with these principles, it has been held that [HN10] an amended complaint asserting violations of state statutes relate back to the original complaint which asserted federal civil rights claims. See Shane v. State of Connecticut, 821 F. Supp. 829, 834 (D. Conn. 1993) ("Counts three and [*15] seven allege violations of Conn. Gen. Stat. § 29-4 and also are governed by a three year statute of limitations. Although these counts were added after the original complaint was filed, their date of filing relates back to the date of filing of the original complaint because they arise out of the same core of operative facts as the other causes of action in the complaint.") (citations omitted). See also Koal Industries Corp. v. Asland, S.A., 808 F. Supp. 1143, 1158 (S.D.N.Y. 1992), where Judge Ward said:

> [HN11]
> As Fed.R.Civ.P. 15(c) makes clear, the amended claim need only arise "out of the conduct, transaction, or occurrence set forth...in the original pleading." There is no requirement that the new claim must have been asserted in the original pleading. A single transaction or occurrence can give rise to numerous claims. An amendment "that changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back."

(citing and quoting 3 Moore's Federal Practice (2d ed. 1992) P 15.15[3]).

B. The First Six Claims Alleged in the Third Amended Complaint

The First through the Sixth Claims [*16] in the TAC allege federal constitutional causes of action under 42 U.S.C. § 1983. Whether those claims are time-barred depends upon whether the TAC relates back to the SAC. n1 In the light of the authorities discussed in Part II.A., I conclude without difficulty that the TAC relates back to the SAC, and accordingly these claims are not barred by the applicable three-year statute of limitations.

---

n1 As noted in text, the SAC, or Second Amended Complaint, is the third-generation pleading, its ancestors being the initial complaint and the AC. All three of these pleadings were filed within the three-year statute of limitations. Defendants do not contend otherwise. Analysis of relation back under Rule 15(c) focuses upon the relationship between the TAC and the SAC, the TAC's immediate predecessor.

---

Preliminarily I note that the SAC was a pro se pleading. That is significant in determining what claims the SAC asserted, a crucial step in Rule 15(c) analysis. [HN12] It is well settled that in parsing the [*17] claims asserted in a pro se complaint, the pleading is construed liberally, particularly where, as here, civil rights violations are alleged. See Boise v. Boufford, 127 F. Supp. 2d 467, 471 (S.D.N.Y. 2001). n2

---

n2 Defendants make the point in their papers that plaintiff Joan Pastorello did not draft the three pro se complaints by herself; rather, she was assisted by two concerned friends. If defendants mean by that factually accurate observation to suggest that the SAC should not be construed with the liberality traditionally accorded to pro se pleadings, there is no substance to the suggestion; neither friend was a lawyer.

---

In the case at bar, both the SAC and the TAC begin their pertinent factual allegations with the description of an assault committed upon plaintiff by one John Hackett in her apartment late in the evening of Thursday, February 25, 1993. SAC at 5 (a section of the pleading captioned "events leading to the current complaint"); TAC PP 13-16. Plaintiff's injuries suffered during [*18] that assault caused her to be transported to the Jacobi Hospital emergency room, where she arrived "shortly after midnight, that is to say, early on Friday, February 26, 1993," SAC at 6; compare TAC P 22 ("Pastorello arrived at Jacobi on Friday, February 26, 1993, shortly after 12:00 a.m."). Thus the two pleadings have a common beginning, and conclude their factual narratives with allegations that plaintiff was discharged from Jacobi on March 2, 1993. SAC at 11; TAC P 26.

While the two pleadings' allegations describing what happened to plaintiff at Jacobi between those dates differ somewhat in detail, the nature of the § 1983 claims asserted are the same: causing plaintiff to remain at Jacobi against her will; n3 medicating plaintiff against her will; and placing her in restraints. In the words of Rule 15(c), this is a quintessential example of an amended pleading asserting claims that "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading."

---

n3 Both the SAC and the TAC allege that plaintiff consistently expressed a preference to be treated at Lenox Hill Hospital, where she was under the out-patient care of physicians for a number of medical conditions.

Case 3:01-cv-02166-JCH    Document 38-2    Filed 12/08/2003    Page 4 of 15

2001 U.S. Dist. LEXIS 19919, *                                              Page 8

[*19]

The defendants' efforts to create a contrary impression are entirely unpersuasive. Their arguments are an exercise in nit-picking. For example, defendants say that the TAC's First Claim (for involuntarily admitting plaintiff to Jacobi) and the Fourth Claim (for causing plaintiff to remain in Jacobi against her will) find no counterpart in the SAC, and consequently constitute new claims which do not relate back. On the contrary: In the SAC plaintiff alleged that EMS personnel who responded to the scene of the assault advised plaintiff that they could not transport plaintiff to Lenox Hill Hospital as she requested because of its location, but that "after emergency treatment I could leave and go to Lenox Hill." SAC at 6. In those circumstances, the SAC continued, plaintiff "consented to go to Jacobi"; however, she "repeated to the [Jacobi] emergency staff that I would accept emergency treatment and tests but that I was an outpatient at Lenox Hill, explained my medical problems, and stated that I wanted to go there as soon as possible for follow-up treatment." Id. The Jacobi staff "did not tell me I could not do so"; but plaintiff alleged in the SAC that after receiving emergency [*20] room treatment, "without my consent and/or permission, I was taken to a room in the 2 South section" of Jacobi. Id. The SAC further alleged that at about 2:00 p.m. on Saturday, February 27, plaintiff's two friends, Helen Brandt and Mary O'Brien, "came to take me to Lenox Hill." Id. A nurse telephoned defendant Hunzicker, the Jacobi physician in charge of plaintiff's case. Hunzicker appeared. A conversation ensued. Plaintiff alleged that "in Dr. Hunzicker's office I repeated that I did not want further treatment at Jacobi now that the crisis was over, and why I wanted to go to Lenox Hill." SAC at 7. The discussion continued. Defendants Lanigan, Griffiths and Greene came upon the scene, as did three Jacobi security guards (the "John Doe" defendants). Plaintiff alleged that a time came when "it appeared to Helen [Brandt] that Jacobi was going to keep me there against my will," id.; Brandt left the room to call an attorney to protect plaintiff's interests. SAC at 7-8. Suddenly one of the security guards leaped upon plaintiff and held her down; Griffiths injected plaintiff twice; plaintiff alleged that "I went limp from the injections and was half-carried to a different room, [*21] one closer to the nurse's station." SAC at 9. Plaintiff was transferred to the Jacobi psychiatric ward on February 28. She was not discharged from Jacobi until March 2.

Given these detailed allegations in the SAC, defendants cannot reasonably contend that the pleading does not allege a claim for an involuntary admission of plaintiff to Jacobi Hospital. The involuntary nature of plaintiff's admission is evidenced by the emergency room staff's disregard of plaintiff's expressed wish to go to Lenox Hill, her placement in a Jacobi medical ward, Hunzicker's disregard of plaintiff's reiterated request to go to Lenox Hill, the assault of the security guard, and her transfer to the psychiatric ward. All that can be said for defendants is that the SAC did not include the particular phrase "involuntary admission," but that is not enough to prevent the TAC from relating back to the SAC. The SAC, a pro se pleading, must be construed liberally in plaintiff's favor, and the defendants, having received it, were aware "that the whole transaction described in it will be fully sifted by amendment if need be." Siegel, 714 F.2d at 216. I am not certain that plaintiff even needed further [*22] to amend her complaint to assert a claim for "involuntary admission," but in any event that claim asserted in the TAC clearly relates back to the SAC.

I reach that conclusion notwithstanding the fact that, as defendants accurately observe in their Brief at 16, the TAC alleges that a "Dr. Rodriguez" placed plaintiff "on hold," a status that prevented plaintiff from leaving Jacobi until March 2, 1993," TAC PP 24, 25 and 26, whereas the SAC contains no reference to Dr. Rodriguez. Plaintiff's reply papers do not explain why the SAC contained no references to "Dr. Rodriguez." As plaintiff's prior pleadings demonstrate, she is not shy about naming members of the Jacobi staff who she feels behaved improperly toward her. It seems plausible to assume that plaintiff learned of the identity of "Dr. Rodriguez" and his "hold order" during the course of the rather considerable discovery that has been conducted in the case to date, but I need not find that to be the fact; the most that can be said about Dr. Rodriguez's recent arrival on the stage is that his alleged conduct "adds another claim arising out of the same transaction or occurrence," and that is not sufficient to prevent the TAC from [*23] relating back to the SAC. The same reasoning applies to defendants' criticism that the SAC did not allege that plaintiff "attempted to leave" Jacobi before her friends arrived during the afternoon of Saturday, February 27, 1993.

Lastly, defendants quibble -- their argument is no more than that -- that the TAC asserts a brand new claim by alleging at paragraph 72 (second claim) and paragraph 90 (sixth claim) that plaintiff was involuntarily and improperly placed in "bed restraints." Defendants, undoubtedly drawing upon their collective medical expertise, contrast the TAC's references to "bed restraints" with the allegations in the SAC at 9 that defendants Griffiths and Lanigan "tied a bedsheet tightly around my thighs so that I could not move my legs in bed, again for no reason." Defendants say that "the application of four-point bed restraints, which are secured around the patient's wrists and ankles, are subject of specific hospital procedures, and are used for a limited

Case 3:01-cv-02166-JCH    Document 38-2    Filed 12/08/2003    Page 5 of 15

2001 U.S. Dist. LEXIS 19919, *                                                    Page 9

purpose." Defendants argue that plaintiff's prior pleadings do not allege that "such restraints" were applied to plaintiff, and conclude that "plaintiff is trying to convert claims about a tight bedsheet which can [*24] be easily untied and removed by pulling it out from under the mattress, into a constitutional claim of involuntary confinement, in bed restraints designed to restrict all movement by the patient." Brief at 17. But surely the gravamen of plaintiff's claim is that she was involuntarily restrained, by whatever means or mechanism, and it borders upon the disingenuous for defendants to define the phrase "bed restraints" in their own technical fashion and then argue that the TAC's allegations with respect to this claim do not relate back to the those of the SAC.

The TAC's first six claims relate back to the SAC. None of them is time-barred.

C. The Seventh, Eighth and Ninth Claims Alleged in the Third Amended Complaint

Defendants regard the TAC's Seventh, Eighth and Ninth Claims as alleging "new causes of action under the Constitution and common law of the State of New York," Brief at 8, and assert that they are time-barred.

Defendants' reasoning in this regard differs from that supporting their contention that plaintiff's federal claims were barred by the statute of limitations, a contention that the Court rejected in Part III.B. The difference reflects the fact that [HN13] state law [*25] tort claims against a municipal agency such as HHC and its employees cannot be sued upon unless a notice of claim has been filed with the agency within ninety days after the claim arises. See N.Y. Gen. Mun. Law § 50-e(1)(a) (McKinney 1986), made applicable to the HHC by N.Y. Unconsol. Laws § 7401(2) (McKinney 1986). "Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." Brown v. Metropolitan Transportation Authority, 717 F. Supp. 257, 259 (S.D.N.Y. 1989) (citations omitted). While N.Y. Gen. Mun. Law § 50-(e)(5) enables a plaintiff to apply to a court for leave to file a late notice of claim, such an application must be made within the New York statute of limitations applicable to HHC and its employees. Brown, 717 F. Supp. at 259 (citing cases). N.Y. Unconsol. Laws § 7401(2) provides that personal injury actions cannot be commenced against the HHC "more than one year and ninety days after the cause of action thereof shall have accrued. . . ."

Given that statutory scheme, plaintiff acknowledges in her reply papers that certain state law claims against HHC and its employees, Lanigan, [*26] Griffiths, and the three "John Doe" hospital security officers, asserted in the originally proposed TAC, were time-barred. Nor could they be salvaged by relating back under Rule 15(c), since even the initial complaint was filed more than one year and 90 days after the causes of action accrued. But plaintiff defends the viability of the present TAC's remaining three claims.

1. The Seventh Claim

The TAC's Seventh Claim alleges that defendants violated plaintiff's rights "under the New York Constitution" by medicating her against her will. Plaintiff says that "the one year and ninety-day limitation period does not apply, even to municipalities, when the claim is based on the state Constitution." Reply Brief at 9. Defendants say that "the New Court of Appeals has held that the notice of claim provisions of the General Municipal Law § 50-i were applicable to a cause of action for 'constitutional torts' in violation of the New York State Constitution." Brief at 11 n.6. For these different propositions, both sides rely on the same case: 423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474, 489 n.5, 510 N.Y.S.2d 507, 503 N.E.2d 63 (1986), cert. denied [*27] , 481 U.S. 1008, 95 L. Ed. 2d 488, 107 S. Ct. 1880 (1987).

Both sides are correct: the cited footnote in 423 South Salina Street states that [HN14] § 1983 federal "constitutional tort" actions "are within the notice of claim requirements of section 50-i, although . . . not within its one-year 90-day limitation period," adding that "for like reason such claim as the complaint asserts based on the State Constitution is also barred by reason of the failure to give notice of claim" (citations omitted).

In the case at bar, it is clear that plaintiff gave a timely notice of claim in respect of involuntary and unjustified medication. Ex. A to the declaration of defendants' counsel is a copy of a form "Notice of Claim against a Public Authority Pursuant to § 50 General Municipal Law" which plaintiff filled out, dated April 29, 1993, and served. The claim's factual narrative says that "from February 27, 1993 through March 2, 1993, employees of the City and Health and Hospitals Corp. continuously assaulted claimant and administered drugs to claimant against her will and confined claimant wrongfully and illegally against her will . . ." (emphasis added). The items of claim include [*28] one for "forcible application of drugs to claimant's person without her permission or consent." This language in the notice of claim is sufficient to preserve a claim for wrongful involuntary medication for inclusion in a subsequent court action. Moreover, assuming without presently deciding that this is a viable claim under the New York State Constitution, n4 it is not barred under the one-year 90-day limitation period; see 423 South Salina Street, 68 N.Y.2d at 486 ("We disagree, however, with [the City's] argument that the one-year 90-day

Case 3:01-cv-02166-JCH   Document 38-2   Filed 12/08/2003   Page 6 of 15

2001 U.S. Dist. LEXIS 19919, *                                                              Page 10

period established by General Municipal Law § 50-i(1), rather than the three-year period governing actions for damages for personal injuries (CPLR 214[5]), applies . . . .") (plaintiff asserted a constitutional due process claim of municipal misuse of taxing power).

n4 See discussion under Part IV, infra.

2. The Eighth Claim

The TAC's Eighth Claim alleges principally that three defendant physicians, Hunzicker, Greene, and Schuetz-Mueller, [*29] who were involved in plaintiff's treatment at Jacobi Hospital, committed the common law tort of medical malpractice. " [HN15] Malpractice is professional negligence and medical malpractice is the negligence of a doctor." 1A N.Y. Pattern Jury Instructions (3d ed. 1998) at 2:150. That particular form of negligence "is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances." Id.

Defendants contend that the General Municipal Law's requirement of a notice of claim and the one-year, 90-day statute of limitations both apply to this claim, and that plaintiff satisfies neither. Defendants also argue that this medical malpractice claim is barred by plaintiff's failure to comply with [HN16] N.Y. CPLR § 3012-a(a)(1) (McKinney 1991), which provides in pertinent part that the attorney for the plaintiff must execute a "certificate of merit" declaring that the attorney "has reviewed the facts of the case and has consulted with at least one physician" and "has concluded on the basis of such review and consultation that there [*30] is a reasonable basis for the commencement of the action."

Plaintiff responds, first, that her notice of claim should be read to include a claim for medical malpractice since the conduct it describes can "easily be considered by any responsible person to deviate so far from the norms of acceptable medical care as to constitute malpractice." Reply Brief at 6.

Second, plaintiff argues that the one-year, 90-day limitation period prescribed by N.Y. Unconsol. L. § 7401(2) does not apply to her medical malpractice claim against Hunzicker, Greene and Schuetz-Miller because "these individuals were not employed by HHC during the relevant time but by a private hospital, which under the terms of an affiliation contract, supplied medical and psychiatric residents to Jacobi." Reply Brief at 7. The record on this motion does not contain the evidentiary basis for that assertion. Assuming without deciding that these three physicians were not HHC employees at the pertinent time, quaere whether that lack of status would not also take the notice of claim requirement out of the case entirely, since the pertinent provisions of the General Municipal Law apply only to "the bringing of a tort claim [*31] against a public corporation, or any of its officers, appointees, or employees." Brown, 717 F. Supp. at 259 (citing and quoting N.Y. Gen. Mun. L. § 50-e(1)(a)). But plaintiff does not presently make that argument.

Third, plaintiff seeks to excuse her failure to furnish an attorney's certificate of merit under CPLR § 3012-a(a)(1) by pointing to written opinions rendered by Gregory A. Schiffhauer, M.D., who has been retained as plaintiff's medical expert witness. Dr. Schiffhauer expresses the not surprising view that if the defendant physicians behaved as plaintiff alleges they did, they committed medical malpractice. Dr. Schiffhauer's opinions are attached as exhibits to the Reply Declaration on this motion. Plaintiff contends that such production satisfies the requirements of Rule 26(a)(2), Fed. R. Civ. P., dealing with pre-trial discovery of expert witnesses, and that in that circumstance, "pursuant to subdivision g" of CPLR § 3012-a, a certificate complying with § 3012-a(a)(1) "is not needed." Reply Brief at 8 n. 2.

I will deal first with the issues presented by CPLR § 3012-a(a)(1)'s requirement of an attorney's certificate of merit. Plaintiff says that no [*32] certificate is necessary because her reply papers on this motion include copies of Dr. Schiffauer's opinions.

I will assume without deciding that this production satisfies plaintiff's initial disclosure obligation under Fed. R. Civ. P. 26(a)(2), whose functional counterpart is found in CPLR § 3101(d)(1). In that circumstance, plaintiff relies upon subsection (g) of [HN17] CPLR § 3012-a, which provides that in lieu of serving the certificate required by the section, a plaintiff may "provide the defendant or defendants with the information required by" CPLR § 3101(d) "within the period of time prescribed by this section." "This section" refers to § 3012-a. Section 3012-a does not explicitly define that "period of time," but the Practice Commentaries to the section say that the phrase

> apparently means that the plaintiff can serve a statement of the data with the complaint under option (1) of subdivision (a). Or, if the plaintiff is invoking option (2) because of a potential time bar, the attorney can say so in the certificate served with the complaint and then serve the 3101(d)(1) statement within 90 days afterwards.

7B McKinney's (1991) at 716. Contrary to plaintiff's contention, [*33] subsection (g) does not do away with the necessity of serving an attorney's certificate in a medical malpractice action; it simply gives a plaintiff two options with respect to the timing of the service, neither of which plaintiff at bar has followed.

However, the case at bar is controlled by a different subsection. [HN18] Section 3012-a(f) provides that "the provisions of this section shall not be applicable to a plaintiff who is not represented by an attorney." In the case at bar, the initial complaint, the AC, and the SAC were all pro se pleadings. Accordingly none of them had to be accompanied by an attorney's certificate of merit. Defendants are thus left to argue that since the third amended complaint was drafted by an attorney, the requirements of § 3012-a must be applied retroactively to preclude, for lack of a certificate, a claim alleged in three prior pleadings which required no certificate. That is a strained concept for which defendants cite no authority, and which I decline to accept. n5

---

n5 Because I conclude in text that § 3012-a does not apply to this case, I need not consider the consequence of failing to serve a certificate of merit, a question that has divided the New York courts. In Santangelo v. Raskin, 137 A.D.2d 74, 528 N.Y.S.2d 90 (2d Dept. 1988), the Second Department held that a plaintiff's failure to serve a timely certificate amounted to a default justifying dismissal of the complaint, leaving the plaintiff to move to open the default by submitting an affidavit of merit from an expert; an attorney's certificate would no longer suffice. However, in Kolb v. Strogh, 158 A.D.2d 15, 558 N.Y.S.2d 549 (2d Dept. 1990), that court overruled Santangelo in the light of the Court of Appeals' decision in Tewari v. Tsoutsouras, 75 N.Y.2d 1, 550 N.Y.S.2d 572, 549 N.E.2d 1143 (1989), which held that a filing omission under CPLR 3406, requiring filing with the court of a notice of commencement of a medical malpractice action, could not in itself be the basis for dismissing the complaint. In the Second Department's present view as expressed in Krogh, "the Legislature failed to confer on the judiciary any power to enforce CPLR 3012-a directly," 558 N.Y.S.2d at 553; in consequence, enforcement of the section's certificate of merit requirement depends upon a defendant moving for an order of compliance, and "if a dilatory plaintiff is so neglectful as to disobey such an order, then sanctions, including the sanction of dismissal, may be imposed." Id. (citations omitted). On the other hand, the First and Fourth Departments, in post-Tewari decisions, have adhered to the Santangelo rule. See Perez v. Lenox Hill Hosp., 159 A.D.2d 251, 552 N.Y.S.2d 244 (1st. Dept. 1990), and Kerns v. Panahon, 158 A.D.2d 936, 551 N.Y.S.2d 98 (1990).

Whichever rule one accepts on this particular point, it would seem from the rationale of all these cases that the production by the plaintiff at bar of the reports of her medical expert would bring her into compliance with § 3012-a, even if, contrary to the conclusion I reach in text, that section applies to her proposed third amended complaint.

---

[*34]

Turning to the applicable statute of limitations, plaintiff, having asserted that at the pertinent time Drs. Hunzicker, Greene and Schuetz-Mueller were not HHC employees, cites Ramos v. Ravan, 253 A.D.2d 582, 677 N.Y.S.2d 140 (1st Dept. 1998), for the proposition that in that circumstance the three-year limitation period governs, rather than the one year and 90 day period governing suits against the HHC under § 7201(2).

Ramos supports the plaintiff's contention. The plaintiff commenced a medical malpractice action against three doctors employed by Montefiore Hospital, a voluntary hospital. Plaintiff's suit was timely under the three-year statute of limitations. But the defendants claimed "to have been residents and interns doing their rotations without compensation at defendant Morrisania [Hospital], which was owned and operated by defendant New York City Health and Hospitals Corporation," and pleaded by affirmative defenses that the action was barred by the one year and 90 day limitation period. 677 N.Y.S.2d at 141. The trial court granted plaintiff's motion to dismiss those affirmative defenses. The appellate division reversed and reinstated [*35] the limitations defenses, but declined to grant defendants summary judgment upon them. The First Department acknowledged that if the defendants were HHC employees at the pertinent time, "a proper notice of claim was a condition precedent to the commencement of these actions, and a viable defense exists as to the untimeliness of commencement." Id. But the court concluded:

> Summary judgment cannot be granted on the affirmative defenses, however, because the true status of the individual defendants has not been established. The record does not contain the affiliation agreement between private employer Montefiore and municipal host Morrisania. Until those defendants can

Case 3:01-cv-02166-JCH    Document 38-2    Filed 12/08/2003    Page 8 of 15

2001 U.S. Dist. LEXIS 19919, *                                Page 12

conclusively establish their transient employee status with defendant HHC, they cannot prevail on these defenses as a matter of law.

Id.

In Ramos the medical malpractice defendants proclaimed their status as transient HHC employees in order to claim the protection of § 7401(2)'s shorter limitations period. The case at bar presents the converse situation; plaintiff proclaims these three defendant physicians' status as private hospital employees in order to deny them that protection. As in [*36] Ramos, the record on this motion does not reveal the employment status of the three physician defendants. I cannot accept the ipse dixit in plaintiff's brief. In the present procedural context, the proper resolution is to reject defendants' contention that the TAC's Seventh Claim is time-barred, without prejudice to defendants renewing it by way of affirmative defense if they believe the underlying facts sustain the defense.

There remains for consideration the effect vel non of General Municipal Law § 50-e's requirement of a notice of claim upon plaintiff's medical malpractice claim. Two questions arise: (1) does this notice requirement apply at all to these defendants, if they were employees of a private hospital at the pertinent time; and (2) assuming the applicability of the requirement, should the notice which plaintiff filed be read to include this claim?

As noted supra, while plaintiff asserts the defendants were not HHC employees, she does not argue in her brief that such a non-status renders § 50-e inapplicable to them. But the appellate division's rationale in Ramos, quoted supra, would seem to suggest that result. In the absence of briefing by the [*37] parties on the point, the Court raises the issue sua sponte.

Assuming without presently deciding that the notice requirement of § 50-e applies to these defendants, the timely notice of claims actually filed by plaintiff must be examined to determine if it embraces a claim for medical malpractice. The principles governing that exercise are summarized in Judge Conner's comprehensive opinion in Fincher v. County of Westchester, 979 F. Supp. 989, 1002-03 (S.D.N.Y. 1997):

> [HN19]
> The purpose of the notice of claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation. The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.
>
> In general, the test of a notice of claim's sufficiency is whether it includes enough information to enable the municipality to investigate the claim adequately. Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim. The fact that a cause of action not mentioned in the notice [*38] of claim arises out of the same incident as enumerated claims is not pivotal; rather, the nature of the claim and the theory of liability are determinative. Any cause of action or theory of liability not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit.

(citations and internal quotation marks omitted). Judge Conner observed in a footnote that while "some lower New York state and federal courts have applied the notice requirements more flexibly," those courts' "more liberal application of § 50-e has not been followed by the substantial majority of cases that have addressed the issue." Id. at 1003 n. 7.

In Fincher, a federal civil rights action against a municipality and its employees which also asserted pendent state law claims, Judge Conner held that plaintiff had not met the statutory requirements of 50-e with respect to a pendent state claim against the municipality "for negligently hiring, training, and/or supervising" certain individual defendants. 979 F. Supp. at 1002. Judge Conner reasoned:

> The notice of claim [plaintiff] served on Ossining does not mention negligent hiring, [*39] training, or supervision among the stated causes of action, contains no factual allegations concerning those claims, and therefore fails to serve notice of those theories of liability. Accordingly, these claims are not properly before us.

Id. (citation omitted).

In the case at bar, plaintiff's notice of claim contains a description of "the time, the place where and the manner in which the claim arose." The document states that "on February 27, 1993 at Jacobi Hospital . . . plaintiff was accosted and became a victim of assault and battery by hospital personnel who forcibly restrained claimant and administered drugs to claimant against her

Case 3:01-cv-02166-JCH   Document 38-2   Filed 12/08/2003   Page 9 of 15

2001 U.S. Dist. LEXIS 19919, *                                              Page 13

will." The notice further recites that plaintiff was thereafter "forcibly and wrongfully confined in a psychiatric facility of Jacobi Hospital against her will, until March 2, 1993." The notice further recites that "from February 27, 1993 through March 2, 1993, employees of the City and Health and Hospital Corp. continuously assaulted claimant and administered drugs to claimant against her will and confined claimant wrongfully and illegally against her will, resulting in a false imprisonment of claimant's person and causing assault and [*40] batteries against claimant's person repeatedly during said interval of time. . . ."

The "items of damage or injuries claimed" specified in the notice are (a) assault and battery; (b) forcible application of drugs without claimant's permission or consent; (c) illegal restraint of claimant "for an interval of four days"; and (d) libel and slander and defamation of claimant through false statements "by hospital personnel and false entries on hospital records" maintained by HHC.

I do not think it requires an impermissibly "flexible" or "liberal" reading of § 50-e or this notice of claim to conclude, as I do, that the notice embraces a claim for medical malpractice. While the claim did not specifically mention a cause of action for medical malpractice, it described in detail horrendous treatment of plaintiff at a specified HHC hospital during a specified period of time. HHC needed no power of imagination to deduce that the "hospital personnel" involved probably included staff physicians. Nor could it have eluded HHC's comprehension that such conduct, if engaged in by physicians, constituted medical malpractice as that concept is defined by the common law. [HN20] Under the New York cases, a [*41] claim may be included in a subsequent law suit if the statutory notice of claim included enough information to enable the municipality to investigate the claim adequately; if the cause of or theory of liability was mentioned in the notice of claim "directly or indirectly"; and if the notice of claim contained factual allegations concerning the cause of action. Plaintiff's notice of claim satisfies all these criteria with respect to the presently asserted claim for medical malpractice. Accordingly I conclude that, assuming that the requirements of § 50-e apply to these defendant physicians, plaintiff's notice of claim is sufficient to allow a medical malpractice claim to be asserted in this action.

3. The Ninth Claim

The TAC's Ninth Claim seeks equitable relief. It proceeds from the theory that the Jacobi Hospital personnel's wrongful treatment of plaintiff generated written medical records about her which are false, defamatory and embarrassing. The Ninth Claim seeks the equitable remedy of expungement.

Defendants appear to regard this as a state law claim for "intentional infliction of emotional distress." Defendants' brief at 11. Having characterized the Ninth Claim [*42] in that fashion, defendants contend that it is time-barred under the one year and 90 day statute of limitation. n6

---

n6 Defendants could not argue that § 50-e of the General Municipal Law operates to bar the claim because a claim for "libel and slander and defamation of character of the claimant by false statements of hospital personnel and false entries in hospital records" was specifically included in the timely notice of claim plaintiff filed pursuant to that statute.

---

This contention fails because defendants mischaracterize the Ninth Claim, which is a federal civil rights claim cognizable under 42 U.S.C. § 1983. DeMarco v. Sadiker, 952 F. Supp. 134 (E.D.N.Y. 1996), is closely in point. The plaintiff brought a civil rights action under § 1983 and pendent state law claims of false imprisonment as a result of his involuntary confinement at a psychiatric center. Plaintiff's prayers for relief included a demand that his medical records at the psychiatric center be expunged. [*43] The defendants in DeMarco contended that the applicable New York statute precluded expunging medical records, but the district court, in a thoughtful opinion by Judge Ross, rejected that argument, pointing out that "while § 1983 makes no specific provision for expungement, that equitable remedy is part of federal common law and has been applied in § 1983 actions." 952 F. Supp. at 142 (citing cases). The DeMarco court added: "That expungement may not be available in state court is irrelevant because the relief that a federal court provides in a § 1983 action is a federal rule, even if derived from state law." Id.

Accordingly the Ninth Claim must be viewed as a claim for federal equitable relief attendant upon an underlying claim which is cognizable under § 1983. It follows that the three-year statute of limitations applies. For the reasons stated in Part III.A. and B., the Ninth Claim in the TAC relates back to the SAC, and consequently is not time-barred.

IV. THE TIMELINESS OF THE PROPOSED AMENDMENT

Defendants argue that the proposed TAC should be refused because of the plaintiff's delay in making this motion. While "undue delay" is a basis for refusing [*44] an amendment, Foman v. Davis, 371 U.S. at 182, and

Case 3:01-cv-02166-JCH    Document 38-2    Filed 12/08/2003    Page 10 of 15

2001 U.S. Dist. LEXIS 19919, *                                    Page 14

counsel for plaintiff say nothing to explain why they waited over three years after appearing for plaintiff before filing this motion to amend, it is well established that " [HN21] a court will deny leave to amend only if the non-moving party is in fact prejudiced by the delay." 3 Moore's Federal Practice (3d ed. 1997) § 15.15[2] at 15-44 (footnote omitted). This is the rule in the Second Circuit. See, e.g., Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230, 234-235 (2d Cir. 1995) (delay alone usually does not warrant denial, even after four years have passed since filing of original complaint); United States ex rel Maritime Association v. Continental Illinois National Bank and Trust Co. of Chicago, 889 F.2d 1248, 1254-55 (2d Cir. 1989) (delay alone not enough, and no significant showing of surprise or prejudice; increased discovery due to amendment, standing alone, does not support refusing the amendment).

In the case at bar, the defendants do not make a persuasive showing that they would be unfairly prejudiced if plaintiff is allowed to file the TAC. Much of the discovery [*45] in the case has been completed; the principal function of the TAC is to arrange previously asserted claims, which have been explored during that discovery, into a more professional order and form. To the extent that the assertion of the claims contained in the TAC give rise to the need to further discovery, that is not a sufficient ground to deny the amendment, which in the Court's view justice requires.

V. THE FORM OF THE THIRD AMENDED COMPLAINT

For the foregoing reasons the Court will grant leave to plaintiff to file and serve a third amended complaint which asserts each of the nine claims contained in the presently proposed pleading.

However, the third amended complaint must be more specific in certain respects. It is not sufficient for plaintiff to allege a violation of "the Constitution," federal or state, in general terms. Wherever a constitutional violation is alleged, the pleading must specifically refer to the constitutional provision which plaintiff contends underlies that particular claim.

Furthermore, it is not sufficient for plaintiff to simply allege that "defendants" are liable on a particular claim. If plaintiff means that all the defendants are liable with [*46] respect to a particular claim, the pleading must say that. If plaintiff intends to refer only to certain defendants, they must be specifically named.

VI. CONCLUSION

For the reasons stated, the Court grants leave to file and serve a Third Amended Complaint, in a form consistent with this Opinion, which asserts all nine claims contained in the presently proposed pleading. Plaintiff must file and serve that Third Amended Complaint on or before December 21, 2001. Defendants must file and serve appropriate responsive papers within the time provided by the Federal Rules of Civil Procedure, calculated from the time that actual service of the Third Amended Complaint is made upon defendants' counsel of record.

Plaintiff is further directed to submit with her Third Amended Complaint a supplemental brief, stating whether plaintiff contends that the notice of claim requirement of § 50-e of the General Municipal Law applies to the three defendants named in the Eighth Claim. If plaintiff does not make that assertion, it is sufficient simply to say so. But if plaintiff contends that, by virtue of these defendants' employment status, that statute does not apply to their conduct, plaintiff's [*47] brief must support that contention. Defendants may respond to it in the context of their answers or motions addressed to the Third Amended Complaint when it has been filed and served. I require these additional submissions, even though I have concluded that plaintiff complied with § 50-e on the Ninth Claim if applicable to these defendants, because I think it is the better procedure to have all issues resolved by this Court in the event of subsequent appellate review.

The foregoing is So Ordered.

Dated: New York

November 30, 2001

CHARLES S. HAIGHT, JR.

SENIOR UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

### CIVIL RIGHTS COMPLAINT

Duane Zienba
#128963
_____
Plaintiff(s),
(Full name(s) and prisoner number(s) if incarcerated)
(Do not use *et al.*)

United States District Court
District of Connecticut
FILED AT    BRIDGEPORT
December 11, 2002
Kevin F. Rowe, Clerk
By: Mary E. Porter
Deputy Clerk

v.

Commissioner John J. Armstrong
Jack Tokarz
Lynn Milling
Fred Levesque
_____
_____

Case No. 3:02cv2185(DJS)
(To be supplied by the court)

Jury Trial Demanded

Defendants Sued In Individual Capacity

Defendant(s).
(Full name(s) and capacity, *e.g.*, official capacity, individual capacity, or official and individual capacitites) (Do not use *et al.*)

### A. PARTIES

1. Duane Zienba (Plaintiff) is a citizen of Connecticut (State) who presently resides at Northern C.I. Box 665, Somers, CT. 06071 (mailing address or place of confinement). If plaintiff is incarcerated, provide inmate number: #128963.

2. Defendant Commissioner John J. Armstrong (name of first defendant) is a citizen of Connecticut (State) whose address is 24 Wolcott Hill Rd. Wethersfield, CT. 06109.

and who is employed as <u>Commissioner</u>
(title and place of employment)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? (✓) Yes ___ No. If your answer is "Yes," briefly explain:
<u>Was acting under color of law at all times relevant to this complaint.</u>

3. Defendant <u>Jack Tokarz</u> is a citizen of <u>Connecticut</u>
    (name of second defendant)                                (State)

whose address is <u>24 Wolcott Hill Rd. Wethersfield, CT. 06109</u>

and who is employed as <u>Deputy Commissioner</u>
(title and place of employment)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? (✓) Yes ___ No. If your answer is "Yes," briefly explain:
<u>Was acting under color of law at all times relevant to this complaint.</u>

(If more space is needed to furnish the above information for additional defendants, continue on a blank sheet which you should label "A. PARTIES." Be sure to include each defendant's complete address and title.)

### B. JURISDICTION

1. Jurisdiction is asserted pursuant to (CHECK ONE)

    ✓ 42 U.S.C. § 1983 (applies to state prisoners)

    ___ *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

2. Jurisdiction also is invoked pursuant to 28 U.S.C. § 1343(a)(3). (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

_____

_____

2

## C. NATURE OF THE CASE

BRIEFLY state the background of your case.

*Please See Attached Pages.*

## D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities have been violated and that the following facts form the basis of my allegations: (If more space is needed to explain any allegation or to list additional supporting facts, continue on a blank sheet which you should label "D. CAUSE OF ACTION.")

Claim I:  *See Attached Pages.*

Supporting Facts: (Include all facts you consider important, including names of persons involved, places, and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.)

Claim II: See Attached Pages.

Supporting Facts:

Claim III: _____

Supporting Facts:

4