<u>United States District Court</u>
<u>District of Connecticut</u>

FILED
2004 JAN 30 P 3:26

Duane Ziemba | Civil Action No.
 | 3:01 cv 2166 (JCH)(HBF)
VS. |
 |
John Armstrong, et al. | January 27, 2004

<u>Motion For Order To Sustain</u>
<u>Admissions Served On Defendant</u>
<u>Armstrong As Admitted</u>

   The plaintiff respectfully moves for an order by this honorable Court, ordering that the admissions served on defendant Armstrong are deemed admitted and cannot be withdrawn, due to it will severely prejudice the plaintiff on the merits. In support the following facts are submitted:

   Plaintiff served on defendant Armstrong two set's of request for admissions (1st and 2nd) dated December 2, 2003. Attached hereto exhibit A and B.

   By order of this court dated December 2, 2003, the

defendants were ordered to file their responses to plaintiff's discovery on or before January 15, 2004. Defendant Armstrong, has blatantly defied this order by the Court, by failing to file responses to these request for admissions. ⟶ Plaintiff was not required to, however he still did, informally attempt to resolve this matter by sending counsel for the defendants two letters dated January 15 and 21, 2004. No response to the request for admissions or two letters has been provided.

Pursuant to Rule 36, Fed.R.Civ.P., plaintiff need not take any action, it is <u>automatic</u> that these request for admissions are admitted. Rule 36: "the matter is admitted unless, within 30 days after service of the request the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."

Not only did defendant fail to file responses within 30 days to these admissions, in addition he blatantly defied the 12/2/03 order by this Court. Due to all of these facts, the plaintiff

#2

respectfully requests: (1) For the record to clearly reflect that these request for addmissions dated 12/2/03 1st and 2nd are admitted; and (2) For an order that these request for admissions cannot be withdrawn, because withdrawel will severely prejudice the plaintiff on the merits.

Wherefore, this honorable Court should grant this motion in all respects.

Respectfully Submitted
*Duane Ziemba*
Duane Ziemba #128963
Northern C.I.
P.O. Box 665
Somers, CT. 06071

#3

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 27th day of January 2004:

Matthew B. Beizer
Neil Parille
Assistant Attorney's General
110 Sherman Street
Hartford, CT. 06105

By: *Duane Ziemba*
Duane Ziemba

#4

# EXHIBIT A

Matthew B. Beizer          December 2, 2003
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

Ziemba V. Armstrong, et al. No. 3:01 cv 2166 (JCH)(HBF)

### 1st Request For Admissions Served On Defendant John Armstrong

Pursuant to Rule 36, Fed. R. Civ. P., defendant Armstrong is directed to in writing under oath make the following admissions, within 30 days.

1. Admit to the genuiness of the attached Administrative Directive 6.5 Use Of Force, with the effective date of August 3, 1998.

2. Admit to the fact that the attached Administrative Directive 6.5 Use Of Force, → effective date August 3, 1998, that this is the Use Of Force Directive which was in effect on March 4, 5 and 9, 1999.

3. Admit to the fact that on March 5, 2003 you revised Directive 6.5 Use Of Force and that

this revised March 5, 2003 Directive 6.5 Supersedes the attached August 3, 1998 Directive 6.5 Use of Force.

Respectfully Submitted
*Duane Ziemba*
Duane Ziemba #128963
Northern C.I.
P.O. Box 665
Somers, CT. 06071

#2

| State of Connecticut Department of Correction | DIRECTIVE NUMBER 6.5 | EFFECTIVE DATE August 3, 1998 | PAGE 1 OF 6 |
|---|---|---|---|
| ADMINISTRATIVE DIRECTIVE | SUPERSEDES: Use of Force - 1/25/93 | | |
| APPROVED BY [signature] 6/25/98 | TITLE: Use of Force | | |

1. **Policy.** Use of physical force shall be authorized only when reasonably necessary to protect any person, prevent escape, prevent damage to property, or maintain order and discipline. The level of physical force shall be minimal, incremental and appropriate to the immediate circumstances.

2. **Authority and Reference.**

    A. Connecticut General Statues Section 18-81, 53a-18, 53a-19, 53a-20, 53a-21 and 53a-22.
    B. American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standards 2-3158 and 2-3159.
    C. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4087, 3-4183, 3-4194, 3-4196, 3-4198 and 3-4268.
    D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1D-17, 3-ALDF-3A-17, 3-ALDF-3A-28, 3-ALDF-3A-29, 3-ALDF-3A-31, and 3-ALDF-3E-08.
    E. Administrative Directives 2.7, Training and Staff Development; 6.4, Transportation and Community Supervision of Inmates; 6.6, Reporting of Incidents; 6.9, Control of Contraband and Physical Evidence; 7.2, Armories; 7.4, Emergency Response Units; and 9.4, Restrictive Housing.

3. **Definitions.** For the purposes stated herein, the following definitions apply:

    A. **Chemical Agent Devices.** Chemical agent devices consist of two (2) categories: (1) Category I devices are hand held aerosol dispensers and (2) Category II devices consist of all methods of administration other then hand held aerosol devices.
    B. **Deadly Physical Force.** Force which may reasonably be expected to cause death or serious injury.
    C. **Force.** Physical contact or contact through use of an armory item by a staff member in a confrontational situation to establish control or restore order.
    D. **Full Stationary Restraint.** Securing an inmate by the four (4) points of the arms and legs to a stationary horizontal surface or device, restricting the inmate's movement.
    E. **In-Cell Restraint.** Restraint within a cell of an acutely disruptive inmate utilizing one or more of the following restraining devices as appropriate: soft restraints, handcuffs, leg irons, bellychains, flex cuffs and/or black box.
    F. **Non-Deadly Physical Force.** Physical force not intended nor reasonably expected to cause death or serious injury.
    G. **Lethal Ammunition.** Ammunition that when used may reasonably be expected to cause death or serious injury.

- H. **Non-Lethal Ammunition.** Ammunition, to include Category II chemical agent projectiles, not reasonably expected to cause death or serious injury.

4. **General Principles.**

   A. Confrontation shall be deferred when such physical force is likely to result in escalation of the incident.
   B. Whenever possible, control and compliance shall be achieved by verbal intervention, defusing tension, warning, reprimand, direct order, disciplinary action. Physical force shall normally be the course of last resort.
   C. Physical force shall only be used to the degree and duration necessary to achieve its authorized objective.
   D. Physical force shall not be used for the harassment or punishment of any person.
   E. Use of physical force may be carried out by personnel in hazardous duty classifications. Use of physical force by other personnel shall be used in accordance with Section 16 of this Directive.
   F. An employee issued an armory item shall be authorized to use the item subject to the chain of command and in accordance with this Directive.
   G. Prior to the use of deadly physical force a verbal warning shall be used to the extent feasible.
   H. This Directive shall be subject to the provisions of related Administrative Directives (e.g., 2.7, Training and Staff Development; 6.4, Transportation and Community Supervision of Inmates; 6.6, Reporting of Incidents; 7.2, Armories; 7.4, Emergency Response Units; and 9.4, Restrictive Housing).

5. **Use of Non-Deadly Physical Force.**

   A. **Protection of Persons.** Non-deadly physical force may be used to protect a person from an immediate physical threat.
   B. **Prevention of Escapes.** Non-deadly physical force may be used to prevent an inmate from escaping from custody.
   C. **Prevention of Property Damage.** Non-deadly physical force may be used to prevent destruction of property.
   D. **Maintaining Order and Discipline.** Non-deadly physical force may be used to enforce an order only when failure to comply with the order jeopardizes the safety of an individual or seriously threatens the security and control of the area. Such force shall be authorized and observed by a supervisor whenever possible.

6. **Use of Deadly Physical Force.** Deadly physical force shall be authorized for use only in accordance with this Section.

   A. **Protection of Persons.** Deadly physical force may be used to defend any person from the use or imminent use of deadly physical force.
   B. **Prevention of Escapes.** Deadly physical force may be used to prevent the escape from custody of an inmate when: (1) an employee reasonably believes the inmate has committed or attempted to commit a felony which involves the infliction or threatened

infliction of serious physical injury upon another person; and (2) if, where feasible, the employee has given warning of intent to use deadly physical force.

7. **Chemical Agents.**

   A. **Category I Chemical Agents.** A properly trained and currently certified custody supervisor, designated Community Services staff member, designated Security Division staff member and Central Transportation staff member may be authorized to routinely carry and use as appropriate a Category I chemical agent. Oleoresin Capsicum (OC) shall be authorized for use as appropriate during transportation in accordance with this Directive. A custody supervisor may authorize the issuance and use as appropriate of Category I chemical agents to trained and certified staff in accordance with this Directive. Upon the direction of a supervisor, a tactical operations team member shall be authorized to carry and use Category I chemical agents in accordance with this Directive.

   B. **Category II Chemical Agents.** Specially trained and designated staff may use Category II chemical agents on the authorization of the highest ranking onsite facility supervisor and subject to the direct supervision of a custody supervisor in accordance with this Directive.

   C. **Decision Factors.** The decision to utilize chemical agents should consider among other factors: (1) immediate danger posed by the inmate (e.g., active aggression, presence of weapons, known history of assaultive behavior); (2) potential injury to staff and/or inmate; (3) area where agent shall be employed; (4) potential exposure or impact on uninvolved persons; or (5) presence of known physical conditions which may contraindicate use, (e.g., heart or respiratory condition).

   D. **Decontamination.** Decontamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control. Protective equipment shall be utilized. Personal decontamination shall include at a minimum: (1) flushing of the eyes; (2) a shower and change of clothing; (3) medical attention; and (4) removal of the person from the effected area if possible.

8. **Restraints.**

   A. **Authorized Use.** Restraints as a use of physical force may be authorized: (1) to prevent escape; (2) to prevent injury to others or self; (3) to prevent property damage; and (4) to ensure compliance with an order. An inmate placed in restraints for a period longer than one (1) hour shall be placed on restrictive status in accordance with Administrative Directive 9.4, Restrictive Housing. Use of restraints in accordance with Administrative Directives 6.4, Transportation and Community Supervision of Inmates, 9.4, Restrictive Housing, or for routine movement shall not be considered a use of physical force under this Directive.

  B. <u>In-Cell Restraints.</u> Use of in-cell restraints shall be in accordance with Administrative Directive 9.4, Restrictive Housing.

  C. <u>Full Stationary Restraints.</u> Use of full stationary restraints for any purpose other than medical shall be in accordance with this Directive. Placement of an inmate in full stationary restraints on a restrictive housing status shall be authorized by the shift supervisor with the notification of the Unit Administrator within one (1) hour of placement. The Shift Supervisor shall review for release from restraints every two (2) hours. Staff shall observe the inmate, at a minimum, of every 15 minutes or continuously if medically required. Medical observation shall be every two (2) hours and shall include the temporary relaxing of restraints if medically indicated to ensure proper circulation. The facility administrator shall review the inmate's status every eight (8) hours and shall notify the appropriate Complex Warden if the restraint status continues beyond 24 hours.

    An inmate shall be left in appropriate clothing and shall not be left unclothed. Adequate accommodations shall be made to relieve an inmate of necessary bodily functions.

    Normally, four (4) point restraints shall be soft, wide and flexible. However, in the event that an inmate compromises the soft restraints, metal mechanical restrains may be used. The use of metal restraints for full stationary restraint shall be with the permission of the Unit Administrator, and shall require a supplemental incident report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

    Any devise used for full stationary restraint of an inmate shall require prior written authorization from the Commissioner or designee.

  D. <u>Restricted Use</u>. Body bags, wet sheet packs and straight jackets shall not be allowed for use as a use of physical force.

9. <u>Firearms</u>. Use of firearms with lethal ammunition may be used as authorized in accordance with Section 6. Use of firearms with non-lethal ammunition may be used in accordance with Sections 5(A), (B) and (C). Warning shots shall not be authorized. A round may be fired into the ground within the boundary of a correctional facility for effect to terminate potentially lethal inmate action. A firearm shall not be used if discharging it could reasonably be expected to endanger the life of any innocent bystander.

10. <u>Baton</u>. A PR-24 or strait baton may only be used by a current, trained tactical operations team member as directed by the Director of Security and shall be in accordance with Sections 5 and 6.

11. <u>Shield</u>. A shield may be authorized by a shift supervisor in accordance with Section 5.

12. <u>Medical Examination</u>. Medical evaluation and treatment shall be provided as soon as possible after the use of physical force and as appropriate.

13. <u>Video Recording</u>. A planned use of physical force within an institution shall be video taped by a trained operator. The camera operator shall state identity of the operator, date, time and location of the recording. The camera shall be continuously operated and focus on the central point of action avoiding any obstruction of view. Any break in the video recording of the incident shall require reintroduction of the recorder, date, time, location, and reason for and duration of the break in recording. Any movement within the facility of the inmate in conjunction with and directly related to the use of force incident shall also be video taped.

    The videotape shall be properly labeled to include the institution, location, date, time, subject to the tape, and identity of the operator. The original tape shall be properly secured and maintained for a minimum of two years. The original tape shall be considered physical evidence in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence. Any movement or relocation of the original tape shall be authorized by the Unit Administrator. The original tape shall be numbered as #1 and copies shall be sequentially numbered. All tapes shall be properly accounted for.

14. <u>Reporting and Record Keeping</u>. Whenever physical force is used a Use of Force Report CN 6501, Attachment A, shall be completed by each employee involved in or observing the use of force incident. This requirement shall not apply to the routine use of restraints which is not considered a use of physical force. In addition to a Use of Force Report CN 6501, a Use of Chemical Agents Report CN 6502, Attachment B, shall be completed for any circumstance where chemical agents is deployed. These reports shall be attached to the Incident Report and submitted as required in Administrative Directive 6.6, Reporting of Incidents.

15. <u>Serious Incident Review</u>. A Serious Incident Review shall be used to assess the appropriateness of a use of physical force in an incident.

    A. <u>Circumstances</u>. A Serious Incident Review shall be conducted whenever: (1) a firearm is discharged; (2) Category II chemical agents are used; and/or (3) a firearm is drawn in a community setting.
    B. <u>Review Committee</u>. A Serious Incident Review Committee shall be appointed within five (5) business days of the incident by the appropriate Deputy Commissioner/designee whose unit was involved in the incident. The committee shall consist of three (3) persons of managerial rank. The Chair shall be of the rank of Captain, Correctional Counselor Supervisor or above. No member of the review committee shall be from the unit where the incident took place.
    C. <u>Committee Activities and Report</u>. The committee shall review and analyze all reports, examine any physical evidence and may interview any witnesses or participants. The committee shall issue a report describing: (1) whether the action taken was

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 6.5 | August 3, 1998 | 6   6 |

| TITLE |
|---|
| Use of Force |

consistent with Department directives; (2) whether other, less severe means of physical force were available to resolve or prevent the incident; (3) what action should be taken to avoid such future incidents; and (4) any recommended changes in Department or unit directives. The committee's final report shall be prepared within 30 days of the incident.

D. Report Review. The report shall be submitted to the Unit Administrator for review. Within 10 business days of receiving the report the Unit Administrator shall forward the report with comments and recommendations to the appropriate Deputy Commissioner through the chain of command. Within five (5) business days the Deputy Commissioner shall forward the report and supporting documentation with comments and action taken to the Commissioner. Upon final disposition the report shall be maintained by the Commissioner/designee.

16. Emergency Circumstances. Nothing in this Directive shall prevent the highest ranking custody supervisor from taking immediate, reasonable action when circumstances require. Nothing in this Directive shall prevent an employee from taking immediate, reasonable action to protect self or others.

17. Exceptions. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# EXHIBIT B

Matthew B. Beizer                              December 2, 2003
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

Ziemba V. Armstrong, et al. No. 3:01 cv 2166 (JCH)(HBF)

### 2nd Request For Admissions Served On Defendant John Armstrong

Pursuant to Rule 36, Fed. R. Civ. P., defendant Armstrong is directed to in writing under oath make the following admissions, within 30 days.

1. Admit that the Administrative Directive 6.5 Use Of Force in effect on March 4, 5 and 9, 1999 <u>did not</u> state the following: A custody supervisor and a health services staff member shall confer and gather pertinent information about the inmate and the immediate situation prior to the use of force, whenever possible.

2. Admit that the Administrative Directive 6.5 Use Of Force which was in effect on March 4, 5 and 9, 1999 <u>did not</u> state the following: Each person involved in the use of force shall be attentive to and conscious of change in inmate behavior or demeanor that might indicate physical distress or any other

physical side effect related to the use of force.

3. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4, 5 and 9, 1999 <u>did not</u> state the following: A supervisor shall limit those staff involved in the use of force to those who are necessary to control and contain the incident.

4. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4, 5 and 9, 1999 <u>did not</u> state the following: A supervisor shall direct the actions of responding staff and continually assess the well-being of both staff and inmates.

5. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4, 5 and 9, 1999 <u>did not</u> state the following: 4. Procedure. This process shall be video recorded in accordance with Section 16 of this Directive. A video recording shall be designated to each inmate while on full stationary restraint status and the video recording shall be utilized at least during placement, each (2) hour check, during any notable change in behavior and removal of restraints.

#2

6. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4 and 5, 1999 <u>did not</u> state the following at C. Full Stationary Restraints: This procedure shall be implemented in collaboration with medical staff. The inmate shall be placed on a mattress that is positioned on top of a bed frame and the inmate shall be positioned face up. Arms and legs shall be restrained such that discomfort to the inmate is minimized.

7. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4 and 5, 1999 <u>did not</u> state the following at C. Full Stationary Restraints: A post incident medical evaluation shall be conducted upon placement and at the indicated intervals: (a) Circulation— every 15 minutes; (b) respiration— every 15 minutes; (c) pulse— every 30 minutes; (d) blood pressure— every 60 minutes; and (e) temperature— every 120 minutes. These checks shall be executed and documented by Health Services Staff in the inmate health record. At least every two (2) hours the restraints must be totally removed or serially removed and each limb of the inmate moved to full range of motion and assessed for trauma, blood circulation, and/or diminished nerve sensation.

#3

8. Admit that the Administrative Directive 6.5 Use of Force which was in effect on March 4 and 5, 1999 <u>did not</u> state the following at G. Full Stationary Restraints: The inmate shall be offered and allowed to attend to bodily functions at a minimum, every two hours. Restrained inmates shall receive normally scheduled meals. Meals shall be bite-sized and served on paper plates, unless a physician has ordered alternate dietary arrangements. If feasible, the inmate may have one (1) arm released to use for feeding. Fluids shall be offered every (2) hours. Food and fluid intake/output and refusal shall be documented. Immediate removal of restraints shall be initiated where a decompensating physical condition of a restrained inmate contraindicates restraints. In such circumstances, the physician shall be notified immediately.

9. Admit to the fact that on March 4 and 5, 1999 there <u>was not</u> any written policy or Directive which stated that an inmate placed in Full Stationary Restraints should be provided with a mattress.

10. Admit to the fact that on March 4 and 5, 1999 there <u>was no</u> form of written policy or Directive within the Department of Correction which stated

#4

that an inmate in Full Stationary Restraints should be provided with liquids.

11. Admit to the fact that on March 4 and 5, 1999 there <u>was no</u> — form of written policy or Directive within the Department of Correction which stated that an inmate in Full Stationary Restraints should be provided with food and/or feeding.

12. Admit to the fact that prior to the March 4 and 5, 1999 restraint of the plaintiff described in this lawsuit, that there was one or more deaths of inmates in the Department in Full Stationary Restraints.

Respectfully Submitted
*Duane Ziemba*
Duane Ziemba #128963
Northern C.I.
P.O. Box 665
Somers, C.T. 06071

#5