# United States District Court
## District Of Connecticut

SEP 2 8 2004

FILED 2004 SEP 23 P 4: 57

U.S. DISTRICT COURT

| | |
|---|---|
| Duane Ziemba | Civil Action No. |
| | 3:01 cv 2166 (JCH)(HBF) |
| vs. | |
| John Armstrong, et al. | September 21, 2004 |

### Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment

 The plaintiff hereby respectfully opposes the defendants' motion for summary judgment in its entirety.   The plaintiff as pro se is to an extreme struggling to litigate this case. This is a very meritorious action and therefore with great humbleness the plaintiff is requesting for this honorable Court to patiently review the material facts set forth herein.  Plaintiff has been as concise as possible.

# I. Introduction And Facts:

The facts and evidence of prior civil action: Ziemba V. Armstrong, et al. No. 3:98 cv 2344 (JCH) (HBF) — are tremendously relevant hereto this subsequent case (prior action and subsequent case hereafter). See Exhibit 1., the Amended Complaint of this prior action. And See Defs' Mem., Attachment C, the Security Division Report pertinent to this prior action.

These facts involve that prior to this case at Northern Correctional Institution (Northern Hereafter) — in August of 1998, the plaintiff was maced and beaten by guards, four pointed to a bed frame for more than 22 consecutive hours (this subsequent case involves a horribly, grotesquely, and most painfully more than 25 consecutive hour restraint -- torture), deliberately denied medical care for his injuries, deliberately denied mental health care, and deliberately denied psychotropic medication that had been ordered by his treating psychiatrist.

In this prior August 1998 action, exactly as in this case --

Unconstitutionally the plaintiff was deliberately denied medical care for his injuries, he was deliberately denied a mattress and placed face down on the steel bed frame -- tightly tied down by chains by his hands and feet, deliberately denied adequate clothing, deliberately denied food, deliberately denied liquids, he was never allowed to use the toilet facilities and thereby forced to urinate on himself, then very intentionally he was left in this truly subhuman and subanimal condition. In both the prior and subsequent cases the defendants and others were gloating at the searing -- horrible -- abuses of the plaintiff.

At Northern - in the prior August 1998 action, following the beating and restraint, the Department of Correction's own Security Division found that the senior supervisory official in charge, Captain Mangiafico (best friends of Captain DeGray in this case) intentionally

#3

Used excessive force against the plaintiff by striking him in the face. The DOC Security Division investigator, in addition to finding that Captain Mangiafico inflicted excessive force on the plaintiff, also found that three of the other guards on the scene "failed to truthfully report what took place", and that, despite the plaintiff's complaints of injuries, the Northern medical staff "neglect[ed] to do a thorough assessment of plaintiff" and failed to document the results."

    **I**ncredibly, despite the Security Division's findings concerning Captain Mangiafico striking the plaintiff in the face and the "neglect" of the medical staff (Medic McAllister who is a defendant in the prior and this subsequent case), despite the totally unjustified length of the restraint, and despite the failure of the remaining staff members to tell the truth about the use of excessive force and the plaintiff's injuries, no one was disciplined for violating the Department's truthfulness directives,

#4

and no one was disciplined for denying the plaintiff needed medical and mental health care. And no one was disciplined for using excessive force against the plaintiff.
Defendant Armstrong, admittedly the DOC official ultimately responsible for imposing discipline upon staff who engage in misconduct or violate the rules, shockingly rejected all of his Security Division's findings. See Armstrong Depo., Exhibit 2, at 15-16; 185-94; 234-37.   Only Captain Mangiafico received discipline of any kind; he was found guilty of "failure to supervise" and was suspended for five days - described as defendant Armstrong as "the least/lowest level of discipline". See Defs' Mem., Attachment C, the Routing Form.

Defendant Armstrong was responsible for this utter lack of discipline.   Defendant Armstrong is properly named as a defendant in both the prior and this subsequent lawsuit. He has blatantly condoned these abhorrent acts

by his staff (already substantiated). The facts clearly reveal that -- incredibly Armstrong rejected all of his Security Division's findings. And he knowingly and very deliberately left the plaintiff in Northern, an extremely hostile and dangerous environment, <u>especially so</u> when Captain Mangiafico was the only person disciplined and transferred out of Northern to another facility. As a result, at Northern, the plaintiff suffered the additional injuries in this subsequent case. These disgusting events occurred on his watch. These horrible, already substantiated, abuses took place directly under his authority. The clear overwhelming material facts in this case demonstrate that defendants Armstrong, DeGray, Myers and McAllister are <u>not</u>, **as a matter of law**, entitled to summary judgment.

## II. Standard For Summary Judgment:

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact

in dispute and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56 (c); Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L.Ed. 202, 106 S.Ct. 2505 (1986); White V. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton V. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial", Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. See Graham V. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

The Second Circuit "ordinarily require[s] the district court to give substantial leeway to pro-se litigants." Gomes V. Avco Corp., 964 F. 2d 1330, 1335 (2d Cir. 1992). "The Court must construe pro-se pleadings broadly", and interpret them "to raise the strongest arguments they suggest.""" Parsons

V. Pond, 126 F. Supp. 2d 205, 207 (D. Conn. 2000) (JCH) (quoting Cruz V. Gomez, 202 F.3d 593, 597 (2nd Cir. 2000). See also Sundwall V. Leuba, 2001 U.S. Dist. LEXIS 737 * (D. Conn. January 23, 2001) (JCH) (same); Clark V. Tosco Corp., 2000 U.S. Dist. LEXIS 19368 * 3 (D. Conn. October 17, 1989) (JCH) ("The Court is bound to construe pro se complaints liberally").

The Supreme Court has recently articulated that the pleading standard under Rule 8 of the Federal Rules of Civil Procedure is a liberal one, and that a complaint must include only a "short and plain statement of the claim", and must simply "give the defendants fair notice" of what the plaintiff's claim is and the grounds upon which it rests". Swierkiewicz V. Soreman N.A., 534 U.S. 506, 513 (2002).

# III. Argument:

Id. At Northern in August of 1998, in the prior action. Despite the DOC Security Division's findings concerning Captain Mangiafico striking the plaintiff in the face and the "neglect" of the medical staff (Medic McAllister who is defendant in prior action and this subsequent case for same sort of violations), despite the totally unjustified length of the restraint (lieutenant Oglesby who is defendant in prior action and in this subsequent case committed same sort of violations), and despite the failure of the remaining staff members to tell the truth about the use of excessive force and plaintiff's injuries, defendant Armstrong failed to discipline anyone for using excessive force, he failed to discipline anyone for violating the Department's truthfulness directives, and he failed to discipline anyone for denying the plaintiff medical care.

Notwithstanding the above - immeasurable material facts, the plaintiff's mother Pamela Ziemba sent a letter dated September 1, 1998 to defendant Armstrong. Which in detail

addresses the severe retaliation by his staff,
and in part states : "Please, you are the only one
to stop this travesty, my son is being destroyed,
please step in". Exhibit 4. Defendant Armstrong
responded "thank you for sharing your thoughts
with me". Exhibit 4.  Despite this clear actual
and constructive notice he <u>did not take any</u>
action to remove plaintiff from Northern a known
extremely hostile and dangerous environment.
Additionally, plaintiff personally sent to defendant
Armstrong letters dated September 1, 3 and 14, 1998,
addressing the severe retaliation by his staff.
Exhibit 5.  Less than one month later Northern
prison officials on September 27, 1998, in retaliation,
in fact, tampered with the plaintiff's food. They
put pieces of razor blade in the food and plaintiff
sustained very serious injuries. See Plaintiff's
Affidavit at 7. — —          And Exhibit 12.

   Defendant Armstrong was aware of this further,
very grave, (Northern) retaliation. Exhibit 5., His
letter to plaintiff dated October 20, 1998.
<u>Utterly unbelievable,</u> he still failed to remove the
plaintiff from Northern, a known extremely hostile
and dangerous environment. At Northern, it was
a well known fact that Captain Mangiafico was

#10

Very popular at Northern, he had alot of friends at Northern. Plaintiff's Affidavit at 3. That following the August 12 and 13, 1998 incidents, Northern prison officials were extremely hostile towards plaintiff, they threatened him, harassed him, made him really fear for his life and safety. They viciously blamed him for having their friend Captain Mangiafico reassigned out of Northern, etc. Plaintiff's Affidavit at 3 and 5. At Northern, it was a well known fact that Captain Mangiafico and defendant Captain DeGray worked together and they were good friends. Plaintiff's Affidavit at 4.

At Northern, in January of 1999, defendant DeGray became the unit manager of 2-west unit, whereat plaintiff was housed. He was overtly extremely hostile towards plaintiff. Repeatedly he told plaintiff that: "He is going to fucking pay for having Captain Mangiafico transferred out of Northern." Defendant DeGray would not leave the plaintiff alone. In retaliation he personally and he had guards in his behalf repeatedly recklessly search the plaintiff's cell. Plaintiff's legal material was read through, ripped up, and it was thrown in the cell toilet. See

# 11

Plaintiff's Affidavit at 8. In February of 1999, defendant DeGray stole the plaintiff's legal work pertaining to the "Mangiafico Suit" which plaintiff had submitted to the unit counselor for copying. Plaintiff's Affidavit at 9. The plaintiff filed three (3) emergency grievances pertinent to these facts dated: February 16, 1999 – Exhibit 6; February 19, 1999 – Exhibit 7; and February 27, 1999 – Exhibit 8. In these justified emergency grievances the plaintiff pleaded to defendants Armstrong and Myers – – for them to move him away from defendant DeGray, and for them to stop the retaliation, but they failed and refused to do so.

   On March 3, 1999, the plaintiff slipped in the shower, seriously sprained his ankle and exacerbated the pre-existing bone mass on his foot. The unit guards called the medical Department and medical staff said that they will see plaintiff in the morning. See Plaintiff's Affidavit at 10, and See Exhibit 13 the Disciplinary Investigation Report – page 1 – – "The night before, I injured my foot in the shower. I was informed I would see medical the next day." In the cell, without restraints

On, plaintiff could walk and move around by holding onto the top bunk bed that runs length of cell, and by holding onto the sink and door frame. But it was not possible for plaintiff to walk while in full restraints consisting of handcuffs behind the back, shackles on ankles, with a tether chain attached thereto. See Plaintiff's Affidavit at 11. (emphasis added)

See Videotape, Defs' Mem. Attachment M. The second recorded incident is actually the first incident. Addressed herein starting at first incident - but second recorded incident on tape. On March 4, 1999, the plaintiff was waiting for medical to see him, when in further retaliation against him, defendant DeGray ordered guards to search his cell. See Plaintiff's Affidavit at 12. Video — clearly shows the plaintiff trying hard to cooperate, he stated to defendant DeGray, "he can't walk because of pain in his foot". Defendant Medic McAllister was present and with profound deliberate indifference to the plaintiff's serious medical need, he

#13

did not enter the cell and did not examine the plaintiff's foot/ankle. Plaintiff stated: "don't hurt me because I can't walk", and "help me up", and he asked "for a wheelchair". Defendant DeGray in further malicious retaliation against the plaintiff, because plaintiff could not walk, ordered the guards to inflict pain to plaintiff (a man harmless already in full restraints). Video shows the guards violently twisted the plaintiff's wrists and plaintiff screaming in pain, as they dragged him in full restraints down concrete floor hallway to shower. To take plaintiff back to cell, they dragged him again, and video clearly shows one of the guards violently kick plaintiff in crotch area — testicles, plaintiff yelled "Why'd you kick me?" Video shows that immediately after the physical force, no medical evaluation or treatment was provided to plaintiff, he was immediately locked up in the cell. Plaintiff's Affidavit at 14:, "One of the guards violently kicked me in my testicles."

#14

_Id._ This grotesque excessive force inflicted the following injuries to the plaintiff: (a) laceration to left leg below knee; (b) cut above right ankle; (c) cuts and laceration to right hand and wrist; (d) cuts and laceration to left hand and wrist; (e) painful brusing all over body; (f) back injury; and (g) testicles were swollen and very sore for a week and half. See Plaintiff's Affidavit at 16, and Exhibit 23, and the video.

_Id._ Following the excessive force, the plaintiff was immediately locked up in the cell. Due to he needed medical treatment for his injuries, he pressed cell intercom button calling for help. Northern hostile guard responded yelling back over intercom: "No body is going to help you". See Plaintiff's Affidavit at 17. Incredibly, in further retaliation and due to plaintiff used intercom calling for help: he was given class A charge Interfering With Safety or Security No. 9903076 - Exhibit 15. And class A charge Interfering With Safety or Security No. 9903074 - Exhibit 13. And class A charge Self Mutilation No. 9903075 — Exhibit 14 and See Plaintiff's Affidavit at 19, these charges are each false, and in the attempt

to cover up the excessive force, defendant
DeGray fabricated this charge. Exhibit 14.

<u>I0.</u> March 4, 1999, grotesque excessive force.
Following these incidents, defendant DeGray went
to plaintiff's cell door demanding to see all his
injuries, plaintiff showed him them and requested
medical care. Defendant DeGray stated: "No one
is going to get him medical care". In return,
plaintiff told him that 'he is writing State Police,
and will sue him'. Defendant DeGray told plaintiff:
"he will not write or sue anyone, he's coming in
the fucking cell and taking all his property".
Defendant DeGray left, then he returned with a
team of guards and he maliciously in sole
retaliation had the plaintiff four pointed to the
steel bed frame, and he did take all of the
plaintiff's property. See Plaintiff's Affidavit at
20., and videotape.

Video -- Shows March 4, 1999 at 2:31 p.m.,
defendant DeGray claims that for the
plaintiff's own protection he was placing
him on four point restraint status.
Contrary to defendant DeGray's
very disturbing claim — the clear

#16

material facts in this case unquestionably prove that defendant DeGray in sole retaliation four pointed the plaintiff. Material facts: See Exhibit 26, DOC Administrative Directive 8.14 at Page 8.(16) "The placement Shall require an order from the on-call psychiatrist within one (1) hour." Defendant DeGray totally disregarded this Directive, DeGray admits that he ordered the placement of plaintiff in the four point restraint and not the on-call psychiatrist. See Exhibit 29., DeGray's responses to interrogatories at 3.

Directive 8.14 Page 8.(16), also mandates: "An order to restrain Shall be subsequent to an evaluation by a physician". Defendant DeGray defied this Directive in order to maliciously inflict retaliation against plaintiff. Video substantiates that no-one subsequently to the four point restraint conducted an evaluation of plaintiff.

Video shows defendant DeGray enter the plaintiff's cell to four point him.

The plaintiff is on the cell floor, stating how: "there's something wrong with his back", he "asked to see medical", and he stated "he has brusises and lacerations all over him". Guards take all of the plaintiff's legal material and the mattress out of cell. Guards lifted plaintiff off floor and plaintiff was panting in pain, and screamed "my back", "please don't hurt me", and he showed his wounds. Plaintiff became furious at defendant DeGray's lies'. These are all genuine issues of material fact.

The documentation in this case substantiates that on March 4, 1999 at 2:55 p.m.- plaintiff was placed into the: Full Stationary Restraints - four pointed to the cell bed frame, and that these restraints were utilized on plaintiff until March 5, 1999 at 4:12 p.m. A total of 25 hours and 17 minutes. See Exhibit 30, the 14 Medical Incident Reports. During this entire restraint, the documentation shows that the plaintiff was **never** released from the restraints, even for the short time needed to relieve his bodily functions.    This very long, and

well documented restraint is especially grotesque — and horrifically excessive, because during this entire restraint the plaintiff was calm, suffering in severe pain, and only hostile <u>one</u> (1) time at the March 5, 1999 - 1:50 p.m. check, 24 hours into the restraint. All of the material facts substaniate that this was a totally unjustified restraint — use of force. **Exhibit 30.** During this entire restraint, other supervisors and medical staff told the plaintiff that : "Captain DeGray ordered him into the restraints and only Captain DeGray can order him to be released." Plaintiff's Affidavit at 23. (emphasis added)

   Intentionally, the plaintiff was denied a mattress. Video shows the guards take the mattress out of the cell and four point the plaintiff to the hard steel bed frame. <u>Despite the fact</u> of defendant Commissioner Armstrong states that an inmate in four point restraints should be provided with a mattress. Exhibit 2, Armstrong Depo., at 95.    The plaintiff prior to the restraint, during and after was denied proper medical care for his injuries. See video. He was denied food - was fed only once on March 4, 1999 at 5:00 p.m. He was denied liquids.

He was denied use of the toilet facilities. He pleaded for the use of the bathroom which was denied, he could not hold it any longer and therefore was forced to urinate on himself while chained face down — which was on March 4, 1999 at about 4:00 p.m. Thereafter the plaintiff was suffering severely. See Plaintiff's Affidavit at 21. And at about 5:00 p.m. when they released his right arm from the restraint so he could eat (only meal he received), he refused to put his arm back into the restraint, because they were physically torturing him. See Video.

  See the Videotape. This is the first incident on the tape, but is actually the third chronologic incident. Unnecessary, excessive force, was used to forcefully put the plaintiff's arm back into the restraint. The plaintiff's legs and his left arm were already tightly chained down. The force utilized was unnecessary and excessive. Despite the fact that the plaintiff was soaked in urine — suffering in truly horrific conditions, and despite the fact of he already had serious, multiple, injuries — his back and testicles were seriously injured. The video clearly shows the boundlessly cruel abuse, the guards are directly on top of the plaintiff's

#20