was to tell the plaintiff: "I'm not sure what incident you are talking about." See Exhibit 9.

Additionally, defendant Myers was placed on actual and constructive notice through Disciplinary charge No. 9903074 — Interfering with Safety or Security. Charge falsely claimed plaintiff refused to comply with a cell shakedown, due to he couldn't walk in full restraints. See video. And see Disciplinary Investigation Report where plaintiff stated facts of: "I never refused a cell shakedown. The night before, I injured my foot in the shower. I was informed I would see medical the next day. Officers came to my cell next day for a cell shakedown. I was physically unable to walk. Officials used malicious force and it was not a last resort."       Defendant Myers condoned this unlawfulness and overt retaliation. See Exhibit 13. With emphasis: plaintiff did suffer from a serious medical condition precluding walking. See Exhibit 19, Medical Records.

Additionally, defendant Myers was placed on actual and constructive notice through Disciplinary charge No. 9903075 — Self Mutilation. Defendant DeGray gave plaintiff this fabricated charge in

#41

the attempt to cover-up the March 4, 1999 excessive
force against the plaintiff. See video, these
injuries were clearly inflicted by the use of force.
Defendant Myers condoned this unlawfulness and
overt retaliation. See Exhibit 14.

Additionally, defendant Myers was placed on
actual and constructive notice through Disciplinary
charge No. 9903076 — Interfering with Safety or
Security. After the March 4, 1999 excessive force,
the seriously injuried plaintiff was immediately
locked up in the cell. See video. Totally denied
needed medical care. From inside cell plaintiff
pressed cell intercom calling for help and medical
care. In return he was outrageously given this
charge. Defendant Myers condoned this
unlawfulness and overt retaliation. See Exhibit 15.

Additionally, defendant Myers was placed on
actual and constructive notice through Disciplinary
charge No. 9903051 — Interfering with Safety or
Security. This is first recorded incident on video.
See video, plaintiff refused to place his arm back
into the restraint, due to they were physically
torturing him. See Disciplinary Investigation—
Report, plaintiff stated the facts: "Lt. Oglesby

#42

refused to let me use the bathroom. I'm only human and after hours of being forced to lay face down chained to a bed, I urinated on myself and was forced to stay in the wet clothing unitil I was given a meal to eat. At this time, I respectfully asked for dry clothing because I was freezing"        Video shows that plaintiff was not provided any dry clothing, he was left chained down to the steel bed frame, that violent excessive force was used to put his arm back in the restraints. He was left in this unbelievable, horrific, condition for more than 25 consecutive hours.    Defendant Myers condoned this immeasurable unlawfulness and overt retaliation. See Exhibit 16.

Additionally, defendant Myers was placed on actual and constructive notice through Disciplinary Report charge No. 9903058 — Disobeying A Direct Order. See the Disciplinary Investigation Report, where plaintiff states the facts of : "From the time of the incident on 3/5, I was taken off four point restraints, officials refused to give me my property. I had no clothing but wet underwear I was forced to urinate in. I held my tray and asked for medical treatment, for clothing

#43

and for the abuse to stop. Lt Little gave me a jumpsuit on 3/8/99. I have <u>still not</u> seen medical and I have just received my property and clothing from CTO Bellerose". <u>This is</u> <u>evidence</u> <u>to how up until 3/8/99 plaintiff was still being very severely abused</u>. He was locked in the cell with no clothing but his urine soaked underwear and denied needed medical treatment. Then outrageously, when he refused to give up his lunch trash he was given this charge. Defendant Myers condoned this abhorrent abuse and overt retaliation. See Exhibit 17.

Additionally, defendant Myers was placed on actual and constructive notice through Disciplinary charge No. 9903091 — Flagrant Disobedience. Due to plaintiff could still not walk, on March 9, 1999 he was given this charge, See video, and excessive force was used against him, painfully ripping all of his healing injuries open. Defendant Myers condoned these horrible abuses and overt retaliation. See Exhibit 18.

Additionally, defendant Myers was placed on actual and constructive notice by two (2)

#44

emergency grievances I.G.P. No. 141-99-231 and 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 — Specifically both grievance address the on-going retaliation," that on 12/14/99 DeGray (defendant) ordered me to be moved to 1E-221 a stripped cell with no desk. In retaliation for my litigation, to hinder and deny my access to court, have no adequate way to write now." Defendant Myers condoned this overt unlawful retaliation. See Exhibit 10.


With respect to defendants DeGray and McAllister's —— inter alia, Armstrong and Myers' personal involvement. __Id.__  Unlawful retaliation was inflicted against the plaintiff, because the plaintiff was exercising his right of access to the courts, he filed complaints, grievances and had the CT. State Police investigate the prison officials committing crimes against him. See Amended Complaint at 12. And the facts in prior civil action: Ziemba V. Armstrong, et al. No. 3:98cv2344 (JCH)(HBF) — Exhibit 1, and that this action was filed on December 2, 1998 — Exhibit 27. Also, Northern Captain Mangiafico was suspended, with disciplinary action, and reassigned out of Northern. See Defs' Mem., Attachment C, the

#45

Routing Form and documentation. Id. These overwhelming material facts prove that the plaintiff was exercising his Constitutionally protected right of access to the Courts, and protected First Amendment rights. Id.

It was a well known fact that Captain Mangiafico and defendant Captain DeGray worked together and they were close friends. See Plaintiff's Affidavit at 4. Northern Officials viciously blamed the plaintiff for having their friend Captain Mangiafico reassigned out of Northern and etc. See Plaintiff's Affidavit at 5. In January 1999, defendant DeGray was extremely hostile towards plaintiff and repeatedly told him that: "He is going to fucking pay for having Captain Mangiafico transferred out of Northern". See Plaintiff's Affidavit at 8. And defendant DeGray in retaliation personally and he had guards in his behalf repeatedly recklessly search plaintiff's cell, read through his legal material, ripping up his legal material, and they threw his legal material in cell toilet. In February 1999, DeGray stole plaintiff's legal work he submitted for copying. See Plaintiff's Affidavit at 8 and 9. The plaintiff filed three (3) emergency grievances

#46

pertinent to these retaliatory acts dated
February 16, 1999 - Exhibit 6 ; February 19, 1999 - Exhibit
7, and ; February 27, 1999 - Exhibit 8.

 Id. On March 3, 1999 the plaintiff slipped in the
shower and sprained his ankle, and he
exacerbated his pre-existing bone mass on his
right foot. Contrary to the defendants'
deceptively false allegations, unquestionably
the plaintiff did, in fact, suffer from a very
serious medical condition which did require
major foot surgery. See the Medical Records,
Exhibit 19.        On March 4, 1999 the plaintiff
was waiting for medical staff to see him,
when in further retaliation defendant DeGray
ordered guards to search his cell. Plaintiff's
Affidavit at 12.   See video, the second
recorded incident. Plaintiff told defendant
DeGray and McAllister "he can't walk
because of pain in his foot". Video clearly
shows defendants DeGray and McAllister's
profound deliberate indifference to the plaintiff's
serious medical need, at no time did Medic
McAllister examine the plaintiff's foot or
ankle, and DeGray as the supervisory
official deliberately failed to ensure that

#47

medical staff provided the plaintiff the obviously needed treatment. <u>Estelle V. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). "Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" <u>Harrison V. Barkely</u>, 219 F.3d 132, 137 (2d Cir. 2000) (quoting <u>Farmer V. Brennan</u>, 511 U.S. 825, 847 (1994)).

It speaks volumes that subsequent -- 19 days later on March 22, 1999 when Dr. Vigneron examined the plaintiff's foot/ankle he <u>witnessed</u> "much swelling" and he ordered a "wheel chair" for plaintiff (**Not** for him to be violently dragged down concrete floor, due to he could not walk and kicked in his testicles.). <u>See Medical Records Exhibit 19.</u>

Video shows that the plaintiff cooperated and <u>full restraints</u> were placed on him. That he was harmless already restrained in full restraints and no force was necessary. Plaintiff stated "don't hurt me because I can't walk", and "help me up", and he asked "for a wheelchair". Defendant DeGray in further retaliation due to plaintiff could not walk (See Plaintiff's Affidavit

at 10, 11, 12, 13 and 14) he ordered the guards to inflict pain to the plaintiff. Video shows guards violently twisting plaintiff's wrists in the handcuffs and plaintiff screaming in pain, as they dragged him <u>in full restraints</u> down the concrete floor hallway to the shower. Then, to return plaintiff back to the cell, they again dragged him, and the video <u>does</u> clearly show one of the guards violently kick the plaintiff in the crotch area -- his testicles. Plaintiff yelled "why'd you kick me?" See Plaintiff's Affidavit at 14, "one of the guards violently kicked me in my testicles". <u>Id.</u> Plaintiff due directly to this physical force sustained serious, multiple physical injuries. See Plaintiff's Affidavit at 16, and Exhibit 23.

March 9, 1999 the retaliation continued. Again, defendant DeGray went to the plaintiff's cell with a team of guards, to search his cell. Plaintiff still could not walk in full restraints. With deliberate indifference to the plaintiff's serious medical need <u>Id.</u>, again DeGray failed to have medical staff (prior to force) examine the plaintiff. Again, due to plaintiff could not walk excessive force was used on him, which painfully ripped open all of his healing injuries from March 4, 1999. See the

#49

video.

In Hudson V. McMillian, the Supreme
Court established the minimum standard
to be applied in determining whether
force by a correctional officer against
a sentenced inmate violates the Eighth
Amendment. 503 U.S. 1 (1992). A plaintiff
need not prove that he suffered a
"significant injury" to state a claim of
excessive force. Hudson, 503 U.S. at 9
("[W]hen prison officials maliciously and
sadistically use force to cause harm,
contemporary standards of decency
are always violated" irrespective of
whether significant injury is present);
Sims V. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)
("no such showing of extreme injury is
required when the claim is that prison
officials used excessive force");
Blyden V. Mancusi, 186 F.3d 252, 263
(2d Cir. 1999) (malicious use of force to
cause harm constitutes an "Eighth
Amendment Violation[] per se ... whether
or not significant injury is evident.").

The inmate does, however, bear the burden of
proving both an objective and subjective

component to his claim. Romano V. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). While the objective component generally relates to the seriousness of the injury, it can also be satisfied when "the amount of force used is more than de minimus, or involves force that is repugnant to the conscience of mankind." Hudson V. McMillian, 503 U.S. at 8-9. Such a determination is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 2 (quoting Estelle V. Gamble, 429 U.S. 97, 103 (1976)).

The subjective component requires that the inmate show that the prison official acted wantonly. This inquiry turns on "whether force was applied in good-faith effort to maintain or restor discipline, or maliciously and sadistically to cause harm." Id. The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (Internal quotations and citations omitted).

## B. The Force Was Objectively Unreasonable

It was boundlessly unreasonable to violently drag the plaintiff down the concrete floor hallway, while he was fully restrained by all his limbs, forcefully twisting his wrists, savagely kicking him in his testicles -- and less then a week later again inflicting force on him which painfully ripped all his healing injuries open. All in retaliation, all directly due to this human being indeed had a foot in need of major surgery. The plaintiff sustained serious, multiple injuries that <u>cannot</u> be considered de minimus. Further, this use of force is (enormously so) — repugnant to the conscience of mankind.

## C. The Subjective Component Is Shown

The chronological material facts of the retaliation by the Northern Officials shows that they acted wantonly. The force was clearly <u>not</u> applied in a good faith effort, but maliciously and sadistically to harm the plaintiff in retaliation.  See Miller v. Leathers, 913 F.2d 1085, 1088 (4th Cir. 1990) (guards violation of regulations supports the "inference" of bad intent), cert. denied, 498 U.S. 1109, 112 L.Ed. 2d 1100, 111 S.Ct.

#52

1018 (1991). Defendant DeGray's bad intent that; he maliciously and sadistically in retaliation wanted to harm the plaintiff, is shown by his violation of 6.5 Use of Force Directive.

See Exhibit 24, at 4. B. "Physical force shall normally be the course of <u>last resort</u>". The force on plaintiff <u>was not</u>, defendant DeGray only had to have the plaintiff provided medical care, and used a wheelchair to move plaintiff, as in fact Dr. Vigneron ordered 19 days later, no force on plaintiff was necessary.

Exhibit 24, at 4, C. "Physical force shall only be used to the degree and duration necessary". Excessive and completely unnecessary force was used on plaintiff.

Exhibit 24, at 4, D. "Physical force shall not be used for the harassment or punishment". Defendant DeGray had the excessive force inflicted against plaintiff in <u>sole retaliation.</u>

Exhibit 24, at 12. "Medical evaluation and treatment shall be provided as soon as possible after the use of physical force". Video shows that after the plaintiff was violently dragged down hallway, then back to cell, <u>immediately</u> Captain DeGray locked him in the cell and <u>no</u> medical evaluation or treatment was <u>ever</u> provided. <u>Id.</u>

See Smith V. Mensinger, 293 F. 3d 641, 649 (3d Cir. 2001) ("Punching and Kicking someone who is handcuffed behind his back and under control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that Kind of force"); Griffin V. Crippen, 193 F.3d 89 (2d Cir. 1999) (reversing dismissal of claim by inmate that guards beat him while he was handcuffed causing him to suffer a bruised shin and swelling of his Knee because there were "genuine issues of material fact concerning what transpired after the [inmate] was handcuffed and whether guards maliciously used force against him.").

The Court of Appeals for this circuit, recognizing that prisoners "are at the mercy of their keepers", has found that use of force by staff against inmates that is "wholly beyond any force needed to maintain order" violates the Eighth Amendment. Inmates of Attica Correctional Facility V. Rockefeller, 453 F. 2d 12, 23, 22 (2d Cir. 1971); See also Hoptowit V. Ray, 682 F. 2d 1237, 1251 (9th Cir. 1982).

#54

D. <u>Plaintiff Was Placed In And Left In The Four Point Restraints In Retaliation And For Punitive Purposes</u>

<u>Id.</u> Video -- Shows March 4, 1999 at 2:31 p.m., defendant DeGray claims that for "the plaintiff's own protection he is placing plaintiff on four point restraint status."

<u>The material facts -- the truth reveals that it was not for plaintiff's protection, but was retaliatory and punitive. And plaintiff was horribly and grotesquely profoundly physically tortured for more than 25 consecutive hours in the restraints.</u>

<u>Id.</u> Following the March 4, 1999 excessive force. Defendant DeGray went to plaintiff's cell door demanding to see all of his injuries. Plaintiff complied and showed them to him and requested medical care. Defendant DeGray stated: "No one is going to get him medical care". In return plaintiff told him that 'he is writing State Police, and will sue him'. DeGray told plaintiff: "he will not write or sue anyone, he's coming in the fucking cell and taking all of his property". See Plaintiff's Affidavit at 20, and see Video. On

#55

Video, DeGray entered plaintiff's cell to four point him. Plaintiff is on cell floor, stating how "there's something wrong with his back and asked to see medical", he stated "he has brusises and lacerations all over him". Guards take all of his legal material and mattress out of cell. Guards lift him off floor onto bunk and plaintiff is panting in pain and screams "my back", and "please don't hurt me", he shows his wounds. Plaintiff became furious with DeGray's lies'. DeGray has plaintiff four pointed to bed frame. These are all genuine issues of **material fact.**

 Incredibly, defendant DeGray and Myers violated all Department policies -- in order to in retaliation four point plaintiff and, sadistically physically torture him. Directive 8.14 at page 8.(16) states: "The placement shall require an order from the on-call psychiatrist within one (1) hour". This was mandated if plaintiff was placed in the restraints for his own protection, <u>but he was not.</u> Defendant DeGray (a Captain - not psychiatrist) admits that in violation of this Directive he ordered the placement of plaintiff in the restraints. See DeGray's responses to interrogatories Exhibit 29 at 3. And Exhibit 26 — See 8.14 Directive.

DOC 8.14 Directive at page 8. (6) also mandates "An order to restrain shall be subsequent to an evaluation by a physician". See Exhibit 26. Moreover, defendant DeGray completely defied this Directive to inflict retaliation. Video fully substantiates that no physician did an evaluation of plaintiff subsequent to restraint.

Id. Plaintiff was exercising his Constitutionally protected -- right of access to the Courts and protected First Amendment rights. A claim for relief may be stated under Section 1983 if administrative decisions are made in retaliation (DeGray four pointed plaintiff in retaliation) for the exercise of [*13] an inmate's Constitutionally protected rights. Gill V. Mooney, 824 F. 2d 192, 194 (2d Cir. 1987); Davis V. Kelly, 160 F. 3d 917, 920 (2d Cir. 1998); Candelaria V. Coughlin, 787 F. Supp. 368, 377 (S.D. N.Y. 1992), aff'd 979 F. 2d 845 (2d Cir. 1992). Routine administrative decisions taken in retaliation for exercising Constitutional rights Constitutes § 1983 claim.

March 4, 1999 at 2:55 p.m. defendant DeGray placed the plaintiff in the Full Stationary Restraints. See Exhibit 30. The restraints were utilized on plaintiff until March 5, 1999 at 4:12 p.m. The

restraint lasted a total of 25 hours 17 minutes.
See Exhibit 30, Medical Incident Reports. During
the entire restraint the documentation shows
that plaintiff was _never_ released, even for the
short time needed to relieve his bodily functions.
Exhibit 30.   This long, and well documented
restraint is especially grotesque and horrifically
excessive,   because during entire restraint the
plaintiff was calm, suffering in severe pain, and
only hostile one (1) time at the March 5, 1999 - 1:50
p.m. Check - - 24 hours into the restraint. See
Exhibit 30.   Ostensibly plaintiff was checked
ever 2 hours - Exhibit 30.


 _All material facts_ fully substantiate the fact,
that this was a totally unjustified use of force.
During this restraint other supervisors and the
medical staff told plaintiff that : "Captain
DeGray ordered him into the restraints and
only Captain DeGray can order him to be
released". See Plaintiff's Affidavit at 23.


        _I_ntentionally the plaintiff was denied a
        mattress. Video shows guards take
        mattress out of cell. Supporting that
        the restraint was definitely not for

#58

the plaintiff "own protection" Id., but Unconstitutionally retaliatory and punitive. Defendant Commissioner Armstrong himself has swore under oath that an inmate in four point restraints should be provided with a mattress. Armstrong Depo., Exhibit 2, at 95.

Deliberately the plaintiff was denied adequate medical care for his injuries, prior to the restraint, during and after. See video. He was denied food - was fed only once on March 4, 1999 at 5:00 p.m., he was denied liquids, and he was completely denied use of the toilet facilities. See Plaintiff's Affidavit at 21, See Exhibit 30, and See the video.    He pleaded for use of the bathroom which was denied, Id., he could not hold it anylonger therefore was forced to urinate on himself while chained face down - which was March 4, 1999 at about 4:00 p.m. Thereafter he was suffering severely, Id.    At about 5:00 p.m. when they released his arm from the restraint so he could eat (only food ever received), he refused to put his arm back into restraints, because they were physically torturing him.

See the video. This is the first incident on

#59

the tape, but third chronologic incident. Unnecessary, excessive force was used to forcefully put plaintiff's arm back into restraint. Video shows guards directly on top on plaintiff's body, with their full weight — despite plaintiff's back and testicles being seriously injured. Plaintiff states how "he is laying in piss", "they wouldn't let him use the bathroom", and asked for "dry clothing". He is on the bare steel bunk, clothed in only underwear, spread eagle tightly chained down by his limbs, soaked in urine, with air vent blowing frigid air on him. See Plaintiff's Affidavit at 21.   Lieutenant Oglesby, says on camera: "inmate is absolutely clothed at this time". We know this is incorrect, because video shows that the plaintiff is clothed in only underwear. The plaintiff was consecutively left in this truly horrific condition until March 5, 1999 at 4:12 pm, See Exhibit 30, Medical Incident Reports.

_Id._ Lieutenant Oglesby was the supervisory official of these abhorrent acts. Who is a defendant in the "prior action" — — Exhibit 1. Who in August of 1998 (guilt immeasurable) tortured plaintiff in the 22 hour four point

#60

restraint. <u>Id.</u> And it is, defendant Armstrong who failed to discipline these prior violation[s], and Armstrong and Myers who ultimately left the plaintiff in the extremely hostile and dangerous environment.

Notwithstanding the boundlessly cruel abuses as indicated above, at March 5, 1999 at 4:12 p.m. plaintiff was released from four point restraints, (See Video) thereon he was locked in the cell with no clothing but urine soaked underwear, and denied needed medical treatment. He was very intentionally by defendant DeGray, left in this subhuman and subanimal condition up until March 8, 1999. See these facts at Exhibit 17.

One can understand why the defendants' in their Memorandum, failed to address this retaliatory restraint. Deference to prison officials does not give them Constitutional license to torture inmates. See <u>Wilkerson V. Utah</u>, 99 U.S. 130, 136, 25 L. Ed. 345 (1878). Defendant Armstrong when asked is it ever appropriate to use restraints as punishment

for an inmates behavior -- Under oath Stated "never", "and it would probably be illegal as well." See Armstrong Depo., Exhibit 2, at 159. And See Armstrong Depo., Exhibit 2, at 156 (A 22-hour restraint "may be too long if the person wasn't displaying any reason or there was no reasonable belief that the person needed to Stay"). Armstrong States this pertinent to the prior actions 22 hour restraint. What about this Subsequent case? The Substantiated conduct in this case is much more egregious. There was absolutely no justification to place the plaintiff in the restraints (Sole retaliation), and absolutely no reason whatsoever to keep him in the restraints for more than 25 (torturous) consecutive hours. I d.

   The image of individuals shackled naked for days to metal bed frame is a sad reminder of the "Soul chilling inhumanity of Conditions in America's prisons." Rhodes V. Chapman, 452 U.S. 337, 354, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981). The Court was clearly within its right to enjoin Such "outmoded and inhuman" practices. Landman V. Royster, 333 F. Supp. 621, 648 (E.D.Va.1971). See Ferola V. Moran, 622 F. Supp. 814, 822

(O.R.I.1985) ("Sheer common sense tells us that immobility in such a position for a protracted period of time will cause great physical suffering and the likelihood of injury .... It plainly works great and gratuitous suffering on an individual to deny him, for [at least 14 consecutive hours], the opportunity to" use the toilet.).

The Supreme Court's decision in <u>Hope V. Pelzer</u>, 536 U.S. 730 (2002) (citations and internal quotes omitted) is particularly relevant to the excessive force claim here:

> As the facts are alleged by Hope, the Eighth Amendment violation is obvious. Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to prison .... Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the

#63

restricted position of confinement for a
7 — hour period, ... to prolonged thirst
..., and to a deprivation of bathroom
breaks that created a risk of
particular discomfort and humiliation.
The use of the hitching post under
these circumstances violated the basic
concept underlying the Eighth
Amendment [which] is nothing less
than the dignity of man. Id. at 738.

## Facts -- Further Retaliation -- And Denial Of Access To The Courts

 Id. Defendant DeGray in retaliation in
February 1999 stole the plaintiff's legal work he
submitted for copying, pertaining to the
"Mangiafico Suit". See Plaintiff's Affidavit at 9.
In retaliation DeGray personally and he
had guards in his behalf repeatedly search
plaintiff's cell, they read through his legal
material, ripped it up, and threw it in the
cell toilet. See Plaintiff's Affidavit at 8. And
on March 4, 1999 when DeGray four pointed the
plaintiff he confiscated all of the plaintiff's
legal material (see video) and he kept it in his
possession until March 8, 1999. See Complaint
at 25. And Grievance at Exhibit 11. On

#64

March 8, 1999 When plaintiff's legal material was returned, all his important legal material had been intentionally stolen by defendant DeGray. Complaint at 26, and Exhibit 11. Which denied plaintiff access to the Courts and caused permanent and irreparable damages. Complaint at 27, See Exhibit 11, and Plaintiff's Affidavit at 24, which specifically sets forth the permanent damages. (emphasis added) Lewis V. Casey, 518 U.S. 343, 135 L.Ed.2d 606, 116 S.Ct. 2174 (1996). See Hiney V. Wilson, 520 F.2d 589, 591 (2d Cir. 1995); Wright V. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Carter V. Hutto, 781 F.2d 1028, 1031-32 (4th Cir. 1986); Sigafus V. Brown, 416 F.2d 105, 107 (7th Cir. 1996); Morello V. James, 627 F.Supp. 1571, 1574 (W.D.N.Y. 1986). Unconstitutional for prison officials to intentionally steal legal material property, and it denies the right of access to the Courts.

Retaliation against inmate for exercising his or her Constitutional rights is itself a violation of Constitution. Thaddeus – X V. Blatter, 110 F.3d 1233 (6th Cir. 1997).

Prison Officials may – not retaliate against

#65

or harass an inmate by denying him access to the Courts. <u>Jones V. Greniger</u>, 188 F.3d 322 (5th Cir.1999); <u>Clarke V. Stalder</u>, 121 F.3d 222 (5th Cir.1997); <u>Sisneros V. Nix</u>, 95 F.3d 749 (8th Cir.1996).    Prisoners have (a) the right not to be retaliated against for exercising his right of access to the Courts. <u>Colon V. Coughlin</u>, 58 F.3d 865, 872 (2d Cir.1995); <u>Percell V. Coughlin</u>, 790 F.2d 263, 265 (2d Cir.1986); <u>Morello V. James</u>, 810 F.2d 344 (2d Cir.1987); <u>Steinberg V. Taylor</u>, 500 F. Supp. 477, 480 (D.Conn.1980).

 Confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim. <u>See Penrod V. Zavaras</u>, 94 F.3d 1399, 1404 (10th Cir.1996) [** 25] (reversing grant of summary judgment to defendants on inmate's claim that guards conducted harassing cell searches, seized legal material, refused to provide inmate with hygiene items, and transferred inmate to segregation in retaliation for suit against prison officials); <u>Green V. Johnson</u>, 977 F.2d 1383, 1389-91 (10th Cir. 1992) (holding that inmate's allegations that guards destroyed his legal material in

retaliation for his filing of suits and grievances stated a cognizable First Amendment claim); <u>Wright V. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1986) (same); <u>Hall V. Sutton</u>, 755 F.2d 786, 787-88 (11th Cir. 1985) (holding that inmate alleged sufficient facts to state a claim of First Amendment retaliation based upon the alleged confiscation of his tennis shoes in retaliation for a prior lawsuit against prison officials); <u>See also</u> <u>Zimmerman V. Tribble</u>, 226 F.3d 568, 573-74 (7th Cir. 2000) (reversing dismissal of claim that prison law librarian repeatedly denied prisoner access to the prison law library in retaliation for protected conduct).

The substantiated conduct in this case is much more egregious. <u>Id.</u> In retaliation the plaintiff was deliberately denied medical care, violent excessive forced was used against him, then when he complained he was four pointed to the steel bed frame for more than 25 consecutive hours -- very intentionally, horribly and grotesquely

physically injured and physically tortured, he was given voluminous incredibly false and retaliatory disciplinary charges, repeatedly his cell - legal material was recklessly searched, read, and destroyed and intentionally stolen, inter alia, he was terrorized, and deprived of even clothing such a basic necessity. <u>Id.</u>

E. <u>It Is Beyond Cavil That Defendants Armstrong, DeGray, Myers and McAllister Are **NOT** Entitled To Qualified Immunity</u>

The qualified immunity analysis is well-established: First, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right; Second, if a violation can be made out, the Court must ask whether the right was clearly established. <u>See Saucier V. Katz</u>, 533 U.S. 194, 200-01 (2000); <u>Ehrlich V. Town of Glastonbury</u>, 348 F. 3d 48, 54-55 (2d Cir. 2003).

First, the defendants' conduct did violate the plaintiff's Constitutional rights. For almost 30 years, it has been the well-established law of the land that the government must "provide medical care for those whom it punishing by incarceration," and that "deliberate indifference to serious medical needs constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle V. Gamble, 429 U.S. 97, 103 (1976) (Citation omitted). Harrison V. Barkely, 219 F.3d 132, 137 (2d Cir. 2000).

Convicted prisoners are protected from misuse of force by the Cruel and Unusual Punishment Clause of the Eighth Amendment. Hudson V. McMillian, 503 U.S. 112 S.Ct. 995, 998-99 (1992); Whitley V. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986). There is no fixed line for how much force violates the Constitution; it depends on all the circumstances. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Hudson V. McMillian, 503 U.S. 112 S.Ct. 995, 1000 (1992). The Eighth Amendment protects prisoners from

#69

"cruel and unusual punishment". See Wilson V. Seiter, 115 L.Ed. 2d 271, 111 S.Ct. 2321, 2323 (1991); Estelle V. Gamble, 429 U.S. 97, 102-05, 50 L.Ed. 2d 251, 97 S.Ct. 285 (1976). Thus, inmates have the right to be free from the "Unnecessary and Wanton infliction of pain" at the hands of prison officials. Estelle, 429 U.S. at 104 (quoting Gregg V. Georgia, 428 U.S. 153, 173, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976)).     The Eighth Amendment is, of course, the primary source of protection against excessive force for incarcerated convicts. Graham V. Connor, 490 U.S. 386, 57 U.S.L.W. 4513, 4516 n.10, 104 L.Ed. 2d 443, 109 S.Ct. 1865 (1989).     The Eighth Amendment prohibits cruel and unusual punishment of prisoners. Farmer V. Brennan, 511 U.S. 825, 832, 128 L.Ed. 2d 811, 114 S.Ct. 1970 (1994).

   It is well established that prisoners enjoy a Constitutional right to access to the Courts. Bounds V. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 72 (1977).   It is equally well established that prison officials may not retaliate against a prisoner for exercising this right. Id. cases cited. (emphasis added).

#70

Second, the plaintiff's constitutional right to medical care, right to be free from excessive force, and his right <u>not</u> to be retaliated against for the excercise of his Constitutionally protected right of access to the Courts, inter alia, protected First Amendment rights -- were <u>all</u> clearly established. <u>See</u>, <u>e.g.</u>, <u>Estelle V. Gamble,</u> <u>supra</u>; <u>Warren V. Keane</u>, 196 F.3d 330, 333 (2d Cir. 1999) (Estelle "right to be free from deliberate indifference to serious medical needs" has been "clearly established since as far back as 1976"); <u>LaBounty V. Coughlin,</u> 137 F. 3d 68, 73-74 (2d Cir. 1998).

With respect to the right of the plaintiff to be free from excessive force, <u>See Johnson V. Glick,</u> 481 F.2d 1028, 1033 (2d Cir), cert. denied, 414 U.S. 1033 (1973); <u>Whitley V. Albers</u>, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986); <u>Hudson V. McMillian,</u> 503 U.S. 112 S.Ct. 995, 998-99 (1992); <u>Trop V. Dulles,</u> 356 U.S. 86, 101, 78 S.Ct. 590, 598 2 L.Ed. 2d 630 (**1958**); <u>Furman V. Georgia</u>, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 346 (1972).

With respect to retaliation. <u>See</u> <u>Campbell V. Beto,</u> 460 F.2d 765, 768 (5th Cir. 1972). <u>Id.</u> Cases cited. (emphasis added).

#71

" This ciruit has held that the doctrine of qualified immunity does not shield officials from § 1983 liability for engaging in retaliatory conduct in response to an inmates exercise of rights." <u>Lawrance v. Coughlin</u>, 862 F. Supp. 1090, 1098 (S.D.N.Y. 1994).

Wherefore, the plaintiff respectfully submits to the wisdom of this honorable court that as a matter of law the defendants' motion should be forthwith denied in its entirety.

Respectfully submitted
The Plaintiff - Pro se
Duane Ziemba
Northern C.I.
P.O. Box 665
Somers, CT. 06071

#72

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 21st day of September 2004:

Matthew B. Beizer
Neil Parille
Assistant Attorney's General
110 Sherman Street
Hartford, CT. 06105

By: Duane Ziemba
Duane Ziemba