United States District Court
District of Connecticut

Duane Ziemba | Civil Action No.
              | 3:01 cv 2166 (JCH)(HBF)
vs.           |
              |
John Armstrong, et al. | August 13, 2004

## Plaintiff's Rule 56 (e) Affidavit

I, Duane Ziemba, hereby under oath declare:

1. At Northern on August 12, 1998 Captain Mangiafico on video assaulted me, then Northern Officials Seriously abused me in four point restraints for more than 22 consecutive hours. See Exhibit 1, 2, 3 and Defs' Mem., Attachment C.

2. Due to I filed complaints and had complaints filed to the CT. State Police, the Commissioner's Office and others, it resulted in Northern Captain Mangiafico being suspended, with disciplinary action, and him reassigned out of Northern. Exhibit 1 and Defs' Mem., Attachment C.

3. It was a well known fact that Captain Mangiafico was very popular at Northern and he had alot of friends at Northern.

4. At Northern, it was a well known fact that Captain Mangiafico and defendant Captain DeGray worked together and they were close friends.

5. Following the August 12 and 13, 1998 incidents at Northern as described in lawsuit: Ziemba V. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF), Exhibit 1 and Defs' Mem., Attachment C. The Northern prison officials were extremely hostile towards me. They threatened me, they harassed me, they made me really fear for my life and safety. They viciously blamed me for having their friend Captain Mangiafico reassigned out of Northern and etc.

6. My family members understood my true, justified, fear. Therefore my Mother: Pamela Ziemba sent a letter dated September 1, 1998 to defendant Commissioner Armstrong. See Exhibit 4. Which states in part: "Please, you are the only one to stop this travesty, my son is being destroyed, please step in". Despite defendant Armstrong receiving this letter, he did not

#2

remove me from Northern, and he did not take any action to stop the serious retaliation by his staff, and he did not take any action to protect me.

7. At Northern, on September 27, 1998 in retaliation, the Northern prison officials, in fact, tampered with my food by putting pieces of razor blades in my food. I sustained very serious injuries. See Exhibit 12, these documents substantiate this severe retaliation. Defendant Armstrong was informed of this grave act of retaliation. See Exhibit 5. Despite these facts, he did not remove me from Northern — an extremely hostile and dangerous environment.

8. At Northern, in January 1999, defendant DeGray became the Unit Manager of 2-West unit whereat I was housed. Overtly he was extremely hostile towards me. Repeatedly he told me that: "I am going to fucking pay for having Captain Mangiafico transferred out of Northern", and he would not leave me alone. In retaliation he personally and he had guards in his behalf repeatedly recklessly search my cell. I witnessed them read through my legal material, they ripped up my legal material, and they threw my legal

#3

material in the cell toilet.

9. In February 1999, defendant DeGray stole my legal work which I submitted to the unit counselor for copying, pertaining to "Mangiafico suit". Counselor told me that DeGray stole it.

10. March 3, 1999 I slipped in the shower, badly sprained and injured my ankle and the pre existing huge bone mass on my right foot was seriously injured. The unit guards called medical and medical staff said that they will see me in the morning.

11. In my cell without the full restraints on, I could walk and move around by holding onto top bunk bed which runs the length of cell, and by holding onto the sink and door frame. But it was not possible for me to walk in full restraints consisting of handcuffs behind the back, shackles on ankles, with a tether chain attached thereto.

12. March 4, 1999 I was waiting for medical to see me, when in further retaliation against me, defendant DeGray ordered guards to search my cell.

#4

13. March 4, 1999 defendant McAllister deliberately did not examine my seriously injured ankle/foot, deliberately he failed to provide me any form of treatment. See Video.

14. March 4, 1999 my right ankle/foot was grossly swollen and seriously injured. I could not place weight on my foot. See Video. Defendant DeGray in further on going retaliation came to my cell with a team of guards. I fully complied and let them put the full restraints on me, I was peaceful, I was in control, and at no time did I threaten or harm anyone. No physical force was necessary. Directly due to it was not possible for me to walk in the full restraints, defendant DeGray maliciously ordered the guards to hurt me. Violently my wrists were twisted in the handcuffs causing excruciating pain, Violently I was dragged down the concrete floor hallway, then dragged back to the cell, at which time one of the guards forcefully kicked me in my testicles. See Video.

15. Id. After the March 4, 1999 physical force, no medical evaluation or treatment was provided to me. I was immediately locked up inside the cell. See Video.

#5

16. The March 4, 1999 unnecessary, retaliatory, excessive force inflicted to me the following injuries:

(a) laceration to left leg below knee;
(b) cut above right ankle;
(c) cut and laceration to right hand and wrist;
(d) cut and laceration to left hand and wrist;
(e) painful brusing all over my body;
(f) back injury; and
(g) my testicles were swollen **and very** sore for a week and half.

17. Id. After the March 4, 1999 excessive force, I was immediately locked up inside the cell and denied medical treatment for all my injuries. Due to I needed medical care, I pushed cell intercom button calling for help. Northern hostile guard responded by yelling back over the intercom: "No body is going to help you." Then shockingly in further retaliation due to I used the intercom calling for help I was given a class A, charge for Interfering With Safety or Security, No. 9903076. See Exhibit 15.

#6

18. In further retaliation, I was given a class A., charge Interfering with Safety or Security, No. 9903074. Exhibit 13. It was falsely alleged I refused to comply with cell shakedown by refusing to walk. The truth is, the facts and evidence show that the shakedown itself was retaliatory, and I did not refuse to comply with it or anything, I had a serious medical condition precluding walking.

19. In further retaliation, and in the attempt to cover up the excessive force, defendant DeGray gave me false-fabricated charge "Self Mutilation", No. 9903075. This man out right lied claiming I had self inflicted injury to my left wrist. See video. This injury was directly caused by the violent excessive force. Not self inflicted. See video - March 4, 1999 excessive --- force, of dragging down hallway, then back to cell. Immediately I was locked up back in cell, deliberately denied medical evaluation/treatment. Then when I pushed cell intercom calling for help, I was outrageously given class A., charge, See Exhibit 15. I did not and would not harm myself.

#7

20. March 4, 1999 following excessive force against me, defendant DeGray came to my cell door demanding to see my injuries, I showed him them and requested medical care. DeGray told me: "No one is going to get me medical care". In return I told him I am writing State Police, and will sue him. DeGray told me: "I will not write or sue anyone, he's coming in the fucking cell taking all my property". He left, then he returned with team of guards and maliciously in sole retaliation had me four pointed to the steel bed frame, and he did take all of my property. See videotape.

21. In sole retaliation defendant DeGray four pointed me to the steel bed frame on March 4, 1999 at 2:55 p.m. and I was left four pointed until March 5, 1999 at 4:12 p.m. During this more than 25 consecutive hour restraint, I was never at any point in time released even for the short time needed to relieve my bodily functions. All in severe, blatant, retaliation. Intentionally I was denied a matteress. I was denied medical care for my injuries. I was denied food - was fed only once on March 4, 1999 at 5:00 p.m. I was denied liquids. ⟶

#8

I pleaded for use of the bathroom which was denied. I could not hold it anylonger and therefore was forced to urinate on myself while chained face down — which was on March 4, 1999 at about 4:00 p.m. Thereafter I suffered severely and at about 5:00 p.m. when they released my right arm for me to eat, I calmly refused to put my arm back into the restraint because they were intentionally physically torturing me.     See the Video -- this is very first incident on tape. Incredibly, they used brutal excessive force on me to forcefully put my arm back into the restraint. My legs, my left arm, and my body was already tightly chained down (soaked in cold urine) to the steel bed frame, when this brutal excessive force was used. Video shows guards directly on top of my back with their full weight. This is despite the fact I was soaked in urine, despite the fact I already suffered from numerous serious injuries, despite the fact my back and my testicles were seriously injured, and despite the fact that I was unclothed. Most shockingly, video shows that it is indeed lieutenant Oglesby who ordered, approved and supervised these abhorrent acts of torture, who is a defendant of the "prior action": Ziemba

#9

v. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF). And it is in fact Oglesby who defendant Armstrong failed to take discipline action against for his "prior 1998 violations" (the 22 hour four point restraint of torture). See Exhibit 1. Now these 1999 subsequent violations, abuses and profound injuries it is ultimately Armstrong who is responsible.    Please see video. The Northern extremely hostile and dangerous prison officials used violent excessive force on me, denied me medical care for my injuries, four pointed me to steel bed frame in retaliation, denied me a mattress, left me soaked in urine, denied me clothing, denied me food, denied me liquides, denied me use of the bathroom, inflicted prolonged sleep deprivation because sleep in such restraints a painful position was impossible, painfully tightly chained my limbs down spread eagle, directly in front of a air vent blowing frigid air out on me, they intentionally physically tortured me for over 25 consecutive hours. I was not ever during this entire restraint released from the restraints.

22. See Exhibit 16. In further retaliation they gave me another class A, charge for Interfering

#10

with Safety or Security, No. 9903051. Directly due to I calmly refused to put my arm back into the restraint, because they were physically torturing me.

23. March 4 and 5, 1999 during the entire four point restraint, other Supervisors and medical staff told me that: "Captain DeGray ordered me in the restraints and only Captain DeGray can order me to be released."

24. March 4, 1999 when defendant DeGray four pointed me to the bed frame, he took all of my boxes of legal material into his possession (See Video). March 8, 1999 he returned it and he had intentionally stolen all of my important legal material. Which resulted in irreparable damages. Documentary evidence pertaining to my criminal conviction were stolen, prejudicing the legality of my unlawful sentence from being challenged. All my legal research was stolen, which was hard to obtain as a prisoner and denied/hindered my access to the Courts. Northern Captain Mangiafico lawsuit, No. 3:98 cv 2344 was stolen with all evidence and records, my family retained copies and the cost of copying and postage to mail these records into me was

#11

Substantial. A high volume of the stolen legal material cannot be identified because it's gone and was never returned, the damages are tremendous. This instant case has been permanently damaged due to records being stolen, which has precluded essential defendants and facts from being litigated.

25. March 5, 1999 from time they released me from the four point restraints until March 9, 1999, deliberately defendant DeGray (the unit manager) ensured that no medical staff seen me, I was totally denied medical care for all my injuries.

26. March 9, 1999 in further acts of retaliation, defendant DeGray once again came to my cell door with a team of guards to search my cell. Due to my serious medical condition it was still not possible for me to walk in full restraints. Therefore, defendant DeGray ordered force to be used on me. Excessive force was used which in absolute fact very painfully ripped open all of my healing injuries inflicted by the March 4, 1999 excessive force.

27. See Exhibit 19. Medical Reports proving that I did suffer from a serious medical condition. On March 19, 1999 is the first time that any medical staff

#12

Saw me to examine my seriously injured foot/ankle. I.D. Which was seriously injured when I slipped in shower on March 3, 1999. On this date of March 19, 1999 nursed witnessed that: "Ⓡ foot swelling ⊕ will place on MD sick call list for follow up, Tylenal 650 mg 15 day". These material facts show 16 days later my foot was still swollen and seriously injured. Emphasis Added: Video --- Shows defendant Medic McAllister on March 4, 1999 did not examine my foot or ankle, did not order any "follow up" treatment, and did not order "Tylenal". What he did do is act with deliberate indifference to my serious medical need, along with defendant DeGray. To inflict retaliation. Please See Exhibit 19., again. On March 22, 1999 (19 days later) Dr. Vigneron Saw me - examined my foot/ankle. He witnessed: "Much swelling" and ordered "Wheel chair". April 1, 1999 (month later) he examined me again and foot was: "less inflamed".   And on September 27, 1999 at Uconn I received major foot surgery.

#13

I declare under penalty of perjury that the foregoing is true and accurate to the best of my Knowlege and belief.

Signed: *Duane Ziemba*
Duane Ziemba

Sworn and Subscribed before me on this 13th day of August, 2004

*Christopher Kny* 8-13-04
Notary Public    my commission expires 1/31/08

#14

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 21st day of September 2004:

Matthew B. Beizer
Neil Parille
Assistant Attorney's General
110 Sherman Street
Hartford, CT. 06105

By: *Duane Ziemba*
Duane Ziemba

#15