United States District Court
District Of Connecticut

FILED

2004 SEP 23 P 4:58

| Duane Ziemba | Civil Action No.
3:01 CV 2166 (JCH)(HBF)

VS.

John Armstrong, et al. | September 21, 2004

Plaintiff's Local Rule 56(a)2 Statement

1. Admitted.

2. Admitted.

3. Denied. See Exhibit 1, 2, 4, 5, 7 and Defs' Mem., Attachment C. Defendant Armstrong did in fact have personal Knowledge of the incidents at Northern by his Subordinates.

4. Denied. See Exhibit 3, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 21, 22 and 23. Defendant Myers did in fact have a personal role in the decisions made by his Correctional Staff.

5. Admitted.

6. Denied. Defendant McAllister did not ever examine the plaintiff on March 4, 1999. The videotape shows the profound deliberate indifference of defendant McAllister, to the plaintiff's serious medical need, he failed to examine the plaintiff's foot/ankle.

7. Admitted that plaintiff didn't suffer from a broken foot, although he did in fact suffer from a serious medical condition mandating major foot surgery. See Exhibit 19.

8. Denied. The videotape shows that plaintiff did not ever refuse to comply, but he did try hard to cooperate stating: "Don't hurt me because I can't walk", and "help me up", and he pleaded "for a wheelchair".

9. Denied. The videotape shows that it was definitely not minimal use of force, but totally unnecessary, retaliatory, and excessive use of force. Due to plaintiff could not walk he was violently hurt, his wrists were twisted in handcuffs, he was dragged down concrete floor hallway, and maliciously kicked in his testicles.

10. Denied. See the above number 9 response, it was violent excessive force.

11. Denied. All of the evidence shows it was a Unconstitutional retaliatory four point restraint, constituting excessive force. See Exhibit 1 through 30 and Plaintiff's entire Affidavit.

12. Admitted that medical and mental health staff saw plaintiff, denied that the assessment was meaningful or adequate.

13. Denied. The Videotape shows that plaintiff did not refuse to comply, but that he did suffer from a serious medical condition— See Exhibit 19, and defendant DeGray with profound deliberate indifference did not have any medical staff examine plaintiff prior to the use of force.

14. Denied. The Videotape shows that the plaintiff did not refuse to comply, and that it was not through a minimal use of force, but was totally unnecessary, retaliatory, excessive force which very painfully ripped open all of

#3

plaintiff's injuries.

15. Denied. All use of force was in fact retaliatory and excessive force. See the Exhibits from 1 through 30 and Plaintiff's entire affidavit.

## Disputed Issues Of Material Fact

16. The facts and evidence of the prior civil action: Ziemba V. Armstrong, et al. No. 3:98 cv 2344 (JCH)(HBF) — are tremendously relevant hereto this Subsequent case. See Exhibit 1., the Amended Complaint and See Defs' Mem., Attachment C, the Security Division Report.

17. The prior action No. 3:98 cv 2344 (JCH)(HBF) — involves that in August of 1998, plaintiff was maced and beaten by Northern officials, four pointed to a bed frame for more than 22 consecutive hours (this subsequent case involves a horribly, grotesquely more than 25 consecutive hour four point restraint), deliberately denied medical for his injuries, deliberately denied mental health care, and deliberately denied psychotropic medication

that had been ordered by his treating psychiatrist. See Exhibit 1.

18. In the prior action No. 3:98 cv 2344 (JCH)(HBF) — at Northern in August 1998, with respect to the four point restraint of the plaintiff -- exactly as in this subsequent case the plaintiff was severely abused and physically tortured in the restraints for a totally unjustified length of time. And very deliberately denied medical care, a mattress, was tightly chained face down by his hands and feet - spread eagle, denied clothing, denied food, denied liquids, he was denied all use of the toilet facilities thereby forced to urinate on himself and left soaked in the urine, and in both the prior and subsequent case the defendants and others were in fact gloating at these horrible abuses of the plaintiff. See Exhibit 1, and Plaintiff's entire Affidavit.

19. In the prior action No. 3:98 cv 2344 (JCH)(HBF) — Exhibit 1. Following the beating and restraint of plaintiff, the Department's own Security Division (See Defs' Mem., Attachment C) found that the Senior Supervisory official in charge, Captain

Mangiafico (Best friends of defendant Captain DeGray in this case, see Plaintiff's Affidavit at 4) intentionally used excessive force against the plaintiff by striking him in his face, and that 3 guards on the scene "failed to truthfully report what took place", and that despite the plaintiff's complaints of injuries the Northern medical staff (defendant McAllister who is a defendant in both cases) "neglect [ed] to do a thorough assessment of plaintiff" and failed to document the results. Exhibit 1.

20. Id. Incredibly, despite the Security Division's findings concerning Captain Mangiafico striking the plaintiff in the face, and "neglect" of medical staff, and despite the totally unjustified length of the restraint, and despite the remaining staff to tell the truth -- defendant Armstrong admittedly the DOC official responsible for imposing discipline upon staff, shockingly rejected all of his Security Division's findings. See Armstrong Depo., Exhibit 2, at 15-16; 185-94; 234-37.

21. Id. Defendant Armstrong's legally unacceptable responses to all of this prior

misconduct (violations), was: (1) He blatantly rejected all findings; (2) He knowingly with disgusting deliberate indifference to the plaintiff's life, safety and well being failed to remove plaintiff from 'Northern the extremely hostile and dangerous environment; (3) He failed to take any meaningful discipline against any of his subordinates guilty; (4) He failed to provide any training to remedy the wrong; (5) He failed to hold anyone accountable for the excessive force and the physical torture of plaintiff, and; (6) He failed to hold anyone accountable for the medical indifference and neglect. See Armstrong Depo., Exhibit 2, at 15-16; 185-94; 234-37.

22. Additionally, defendant Armstrong was placed on actual and constructive notice of the unlawful violations, and of his staff members severe retaliation against the plaintiff through Exhibits 1,4,5,6,7,8,11 and 12, but he failed and refused to remedy the wrong.

23. Defendant Armstrong knowingly failed to remove the plaintiff from the hostile and

dangerous environment at Northern. See Exhibit 1, and See Exhibits 1, 4, 5, 6, 7, 8, 11 and 12, and See Defs' Mem., Attachment C.

24. On September 27, 1998 at Northern, in further retaliation against the plaintiff, the officials tampered with plaintiff's food, by putting pieces of razor blade in his food, plaintiff sustained serious injuries. See Exhibit 12 and Plaintiff's Affidavit at 6.

25. It is defendant Armstrong's created policy and custom of 6.5 Directive Use of Force, under which the unconstitutional practices occurred of the plaintiff being horribly abused and physically tortured in the four point restraints. See Exhibit 24.

26. Defendant Armstrong ostensibly responded to plaintiff's correspondence with his letters dated: September 10, 23 and 29, 1998, October 20, 1998 and September 9, 1999. Exhibit 5.

27. Defendant Myers was placed on actual and constructive notice of the unlawful violations, and the severe retaliation against the plaintiff

by his staff through Exhibits 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 20, 21, 22, 24 and 28, but he failed and refused to remedy the wrong.

28. Defendant Myers Knowing failed to remove the plaintiff from the extremely hostile and dangerous environment at Northern. See Exhibits 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 20, 21, 22, 24 and 28.

29. Plaintiff was exercising his Constitutionally protected right of access to the Courts and First Amendment rights. See Exhibit 1, 4, 5, 6, 7, 8, 9, 10, 11 and 27. And Plaintiff's Affidavit at 2, 5 and 9.

30. It was a well Known fact that Captain Mangiafico and defendant Captain DeGray worked together and they were close friends. See Plaintiff's Affidavit at 4.

31. Northern officials viciously blamed the plaintiff for having their friend Captain Mangiafico reassigned out of Northern. See Plaintiff's Affidavit at 5.

32. In January 1999, defendant DeGray was

extremely hostile towards plaintiff and repeatedly told him that: "He is going to fucking pay for having Captain Mangiafico transferred out of Northern". See Plaintiff's Affidavit at 8.

33. Defendant DeGray in retaliation personally and he had guards in his behalf repeatedly recklessly search plaintiff's cell, read through his legal material, ripped it up, and threw it in the cell toilet. See Plaintiff's Affidavit at 8.

34. Defendant DeGray in February 1999, stole the plaintiff's legal work in retaliation, which he submitted for copying, pertaining to "Mangiafico suit". See Plaintiff's Affidavit at 9.

35. Plaintiff filed 3 emergency grievances pertinent to the retaliatory acts dated: February 16, 1999 - Exhibit 6 ; February 19, 1999 - Exhibit 7 and ; February 27, 1999 - Exhibit 8.

36. Unquestionably the plaintiff did suffer from a very serious medical condition which did require major foot surgery. See Exhibit 19.

37. March 3, 1999 plaintiff slipped in the shower, badly

Sprained and injured his his ankle, and the pre existing huge bone mass on his right foot was seriously injured. The unit guards called medical staff and medical staff said that they will see him in the morning. See Plaintiff's Affidavit at 10, and See Exhibit 13.

37. Plaintiff in his cell without the full restraints on, could walk and move around by holding onto top bunk bed which runs length of cell, and by holding onto the sink and door frame. But it was not possible for him to walk in full restraints consisting of handcuffs behind the back, shackles on ankles, with a tether chain attached thereto. See Plaintiff's Affidavit at 11.

38. March 4, 1999 plaintiff was waiting for medical staff to see him, when in further retaliation against him, defendant DeGray ordered guards to search his cell. See Plaintiff's Affidavit at 12.

39. March 4, 1999 defendant McAllister deliberately did not examine plaintiff's seriously injured ankle/foot, and deliberately failed to provide plaintiff any form of treatment. See Video, and Plaintiff's Affidavit at 13.

40. Defendant DeGray on March 4, 1999 deliberately failed to ensure that medical staff examined plaintiff's seriously injured foot/ankle, or provide plaintiff treatment. See Video.

41. March 4, 1999, due to plaintiff could not place weight on his foot, and he could not walk in the full restraints -- defendant DeGray in further on going retaliation against plaintiff maliciously ordered guards to hurt him. Violently his wrists were twisted in the handcuffs causing excruciating pain, Violently he was dragged down the concrete floor hallway in full restraints, then dragged back to the cell at which time one of the guards forcefully kicked him in his testicles. See Video, See Plaintiff's Affidavit at 14.

42. On March 4, 1999 prior to the use of force, plaintiff fully cooperated and complied with all orders and cuffed up, was placed in full restraints, he was 100% peaceful, he was in control, and at no time did he threaten or harm anyone. See the Video, and see Plaintiff's Affidavit at 14.

43. Videotape Shows on March 4, 1999 the plaintiff

was in fact already in full restraints, and he was peaceful, he was completely harmless when the totally unnecessary force was used against him.

44. Videotape shows harmless plaintiff pleading with defendant DeGray, he stated very clearly: "Don't hurt me because I can't walk", and "help me up", and he asked "for a wheelchair".

45. Videotape shows that Id., after the use of force on plaintiff, immediately plaintiff was locked up in cell and no medical evaluation or treatment was provided to him.

46. The March 4, 1999 use of force against the plaintiff constitutes retaliatory and excessive force.

47. Id. The March 4, 1999 unnecessary, excessive force against the plaintiff, directly inflicted the following serious physical injuries to the plaintiff: (a) laceration to left leg below knee; (b) cut above right ankle; (c) cut and laceration to right hand and wrist; (d) cut and laceration to left hand and wrist; (e)

painful brusing all over body; (f) back injury; and
(g) testicles were swollen and very sore for
a week and a half. See Plaintiff's Affidavit at
16, See Exhibit 23, and See Video.

48. Id. Following the March 4, 1999 Use of force,
in violation of 6.5 Directive, plaintiff was immediately
locked inside cell, and denied needed medical
treatment for his injuries. Therefore inside of the
cell he pressed the cell intercom button calling
for help. Northern hostile guard responded by
yelling back over the intercom: "No body is going to
help you". Then shockingly in further retaliation,
due to plaintiff had used the intercom calling
for help, he was given a class A charge No.
9903076. See Plaintiff's Affidavit at 17, and Exhibit
15.

49. March 4, 1999 in complete violation of 6.5
Directive Use of Force — Exhibit 24 at 12.,
defendant DeGray did not following the use of
force have a medical evaluation done of
plaintiff, or the plaintiff provided medical
treatment. Immediately he locked the plaintiff
inside the cell. See the Videotape.

50. March 4, 1999 following the excessive force against the plaintiff, defendant DeGray went to plaintiff's cell door demanding to see all his injuries, plaintiff showed him them and requested medical care. DeGray told plaintiff: "No one is going to get him medical care". In return plaintiff told him 'he is writing to State Police, and will sue him'. DeGray told plaintiff: "He will not write or sue anyone, he's coming in the fucking cell taking all his property". DeGray left, then returned with a team of guards and he maliciously in sole retaliation four pointed plaintiff to the steel bed frame, and he did take all of the plaintiff's property. See videotape, and Plaintiff's Affidavit at 20.

51. In sole retaliation defendant DeGray four pointed the plaintiff to the steel bed frame on March 4, 1999 at 2:55 p.m. and did not release plaintiff until on March 5, 1999 at 4:12 p.m. It was a 25 hour and 17 minute consecutive hour restraint. See Exhibit 30.

52. Defendant DeGray violated all Department poilicies — 8.14 Directive to inflict retaliation

against plaintiff and four point him to the bed frame. See Exhibit 26, 8.14 Directive at page 8.(16).

53. Defendant DeGray admits that he was responsible for four pointing the plaintiff to the bed frame. See Exhibit 29, DeGray's responses to interrogatories at 3.

54. Video shows defendant DeGray with a team of guards enter the plaintiff's cell to four point him.

55. Video shows the plaintiff is on the cell's floor. Stating fact of how "there's something wrong with his back," and he "asked to see medical."

56. Video shows that the plaintiff stated the facts of "he has bruises and lacerations all over him."

57. Video shows fact of guards took all of the plaintiff's legal material property out of the cell.

58. Video shows fact of a guard took the plaintiff's mattress out of the cell.

59. Video shows facts of the guards lifted the plaintiff off the floor and placed him face down on the steel bed frame, plaintiff was panting in clear pain and yelled "my back", and "please don't hurt me", and he showed his wounds from the use of force.

60. Video shows that the plaintiff clearly became furious at defendant DeGray's infliction of retaliation and his lies'.

61. During the entire restraint the plaintiff was tightly chained down to the steel bed frame, painfully spread eagle. See video.

62. Video shows that defendant DeGray four pointed the plaintiff to the hard steel bed frame, and denied the plaintiff a mattress, despite the fact that defendant Commissioner Armstrong states that a mattress should be provided. See Armstrong Depo., Exhibit 2, at 95.

63. During the entire restraint the plaintiff was never fully released from the restraints, even for the short time needed to relieve his bodily functions. See Exhibit 30, the 14 Medical Incident Reports.

64. The plaintiff was four pointed to the bed frame for more than 25 consecutive hours, and during this entire restraint the plaintiff was hostile only one (1) time on March 5, 1999 — at 1:50 p.m. See Exhibit 30.

65. Id. All evidence shows that the restraint was totally unjustified. See Exhibit 30.

66. Id. All evidence shows that it was a retaliatory restraint.

67. Intentionally plaintiff was denied a mattress. Id. See video.

68. Intentionally plaintiff was denied adequate clothing. Id. See video.

69. Deliberately plaintiff was denied food and only fed once. Id. See video and Exhibit 30.

70. Deliberately plaintiff was denied liquids. Id. See Exhibit 30 and Plaintiff's Affidavit at 21.

71. Deliberately plaintiff was denied use of the toilet facilities. See video.

72. Id. Plaintiff was forced to urinate on himself, and deliberately left soaked in urine. See Video and Plaintiff's Affidavit at 21.

73. Id. At about 5:00 p.m. on March 4, 1999 When they released plaintiff's arm for him to eat, he refused to put his arm back into the restraint because they were physically torturing him. See Video and Plaintiff's Affidavit at 21.

74. Id. Unnecessary and excessive force was used to forcefully put the plaintiff's arm back into the restraint. See Video and Plaintiff's Affidavit at 21.

75. Id. The Video clearly shows guards on top of plaintiff's body with their full weight.

76. Id. Videotape shows the facts of the plaintiff is laying in piss and they wouldn't let him use the bathroom.

77. Id. Videotape shows that it is lieutenant Oglesby who was the supervisory official of these abhorrent acts. Who is a defendant in the "prior action" No. 3:98 cv 2344 (JCH)(HBF) and Who in August of 1998 abused/tortured plaintiff

in the 22 + hour restraint. See Video and Plaintiff's Affidavit at 21.

78. Id. It is defendant Armstrong who utterly failed to take any disciplinary action against lieutenant Oglesby's "prior violations". See Plaintiff's Affidavit at 21, and Armstrong Depo., at 15-16 ; 185-94 ; 234-37,

79. Id. Lieutenant Oglesby blatantly lied on the Video by claiming plaintiff was "absolutely clothed". See Video.

80. March 5, 1999 When plaintiff was released from the restraints, he was locked in the cell in only his urine soaked underwear, and denied clothing until March 8, 1999. See Exhibit 17.

81. 8.14 Directive at page 8.(16) mandates that "the placement (of an inmate in 4 point restraints) shall require an order from the on-call psychiatrist within one (1) hour." Defendant DeGray defied this Directive to maliciously inflict retaliation against the plaintiff. DeGray admits that he is the

person who ordered the placement of plaintiff into the restraints, and not a psychiatrist. See Exhibit 29, DeGray's responses to interrogatories at 3., and See 8.14 Directive Exhibit 26.

82. 8.14 Directive – Exhibit 26, at page 8, (16) mandates: "An order to restrain shall be subsequent to an evaluation by a physican." Defendant DeGray Completely Violated this Directive to maliciously inflict the retaliation against the plaintiff.    No physican ever saw or did any form of an evaluation on plaintiff subsequent the four-point restraint of the plaintiff.    See the Videotape.

83. The four point restraint of plaintiff was in Sole retaliation by defendant DeGray, and horrifically excessive, and the plaintiff in the restraints was profoundly physically tortured. Id. See video, and Exhibit 30, and Plaintiff's Affidavit at 21.

84. Defendant Armstrong could not recall a Single instance of an inmate being restrained as long as plaintiff in "prior action" the 22 hour restraint (this Subsequent case involves a

#21

more than 25 consecutive hour restraint.\ See Armstrong Depo., Exhibit 2, at 145-47.

85. March 9, 1999 the retaliation against plaintiff continued. Once again, defendant DeGray went to the plaintiff's cell with a team of guards to search cell. Excessive force was used against Plaintiff which very painfully ripped open all his healing injuries. See Video.

86. Id. Prior to the March 9, 1999 force on plaintiff, with deliberate indifference to plaintiff's serious medical need, defendant DeGray deliberately failed to have medical staff examine the plaintiff. See the Video.

87. Id. March 19, 1999 is the very first time that any medical staff examined plaintiff's seriously injuried foot/ankle (16 days later) See Exhibit 19.

88. Id. March 19, 1999 when nurse examined plaintiff's foot/ankle it was witnessed: ® foot swelling ⊕ will place on MD sick call list for follow up, Tylenal 650 mg 15 day".

89. Id. March 22, 1999 (19 Days later) Dr. Vigneron

#22

examined plaintiff's foot/ankle and witnessed:
"Much Swelling" and ordered "a wheelchair"
for the plaintiff. See Exhibit 19.

90. Id. September 27, 1999 at Uconn the
plaintiff received major foot surgery. See Exhibit
19.

91. March 4, 1999 until March 8, 1999 defendant
DeGray had all of plaintiff's legal material
in his possession, on March 8, 1999 when
plaintiff's legal material was returned all
his important legal material had been
intentionally in retaliation stolen by DeGray.
Which inflicted tremendous - permanent
damages. See the video, and Plaintiff's
Affidavit at 24.

92. Id. March 5, 1999 until March 9, 1999 defendant
DeGray deliberately ensured that no medical
staff seen plaintiff. See Plaintiff's Affidavit
at 25.

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 21st day of September 2004:

Matthew B. Beizer
Neil Parille
Assistant Attorney's General
110 Sherman Street
Hartford, CT. 06105

By Duane Ziemba
Duane Ziemba

#24