UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUANE ZIEMBA | : | CIVIL NO. 3:01CV2166 (JCH) |
| v. | : | |
| CAPTAIN DeGRAY | : | FEBRUARY 27, 2006 |

### DEFENDANT'S TRIAL MEMORANDUM

I. **TRIAL COUNSEL**

    **Plaintiff:**    Duane Ziemba, Pro Se
                    Garner Correctional Institution
                    50 Nunnawauk Road
                    P.O. Box 5500
                    Newtown, CT  06470

    **Defendant:**    Matthew B. Beizer
                      Neil Parille
                    Assistant Attorneys General
                    110 Sherman Street
                    Hartford, CT  06105
                    Tel.:   (860) 808-5450
                    Fax:   (860) 808-5591

II. **JURISDICTION**

According to the plaintiff's complaint, jurisdiction is invoked under 28 U.S.C. §§ 1313, 1343(3) and 1367(a) and under 42 U.S.C. §§ 1983 and 1988.

III. **JURY/NONJURY**

Jury trial.

## IV. NATURE OF THE CASE

The plaintiff, a pro se inmate, brought this action against four Connecticut, Department of Correction ("DOC") officials concerning several incidents occurring at Northern Correctional Institution in March, 1999. In its Ruling on Defendants' Motion for Summary Judgment dated March 28, 2005, the District Court granted the defendants' motion with respect to all of the plaintiff's claims, except for the claim that defendant DeGray placed him in four point restraints on March 4, 1999 for punitive purposes and in retaliation for his filing lawsuits and left him in restraints for an unreasonably long period of time. Accordingly, the sole issue remaining for trial is the plaintiff's claim that defendant DeGray utilized excessive force in violation of the plaintiff's Eighth Amendment rights.

## V. STIPULATION OF FACTS

1. At all times pertinent to this action, the plaintiff was an inmate incarcerated at Northern Correctional Institution.

2. At all times pertinent to this action, defendant DeGray was a Correctional Captain employed at Northern Correctional Institution.

3. At approximately 2:00 p.m. on March 4, 1999, the plaintiff stated to defendant DeGray and Major Lajoie that he intended to do physical harm to himself.

4. At approximately 2:55 p.m. on March 4, 1999, the plaintiff was placed into soft four point restraints.

5. The decision to place the plaintiff into soft four point restraints was made by Major Lajoie, in conjunction with defendant Captain DeGray.

6. While in restraint status, the plaintiff was assessed every fifteen minutes by a member of DOC staff.

7. While in restraint status, the plaintiff was assessed every two hours by a member of Northern's medical staff.

8. While in restraint status, the plaintiff was fed and permitted to use the toilet, if necessary.

9. After 3:00 p.m. on March 4, 1999, defendant DeGray did not have any interaction with the plaintiff until 9:30 a.m. on March 5, 1999.

10. At approximately 5:40 p.m. on March 4, 1999, the plaintiff's right arm was taken out of the restraints to allow him to eat a meal, which he was provided by DOC staff.

11. After eating his meal, the plaintiff physically resisted being re-restrained and made various threatening statements to DOC staff. As a result, Lieutenant Oglesby called for an extraction team to re-restrain the plaintiff.

12. The extraction team successfully re-restrained the plaintiff with a minimal amount of physical force.

13. Defendant DeGray was not involved in this incident.

14. At approximately 2:00 p.m. on March 5, 1999, Lieutenant Ruiz and several correctional officers went to the plaintiff's cell for the purpose of removing him from restraint status.

15. The plaintiff became enraged, extremely hostile and physically threatening toward DOC staff.

16. As a result of the plaintiff's conduct, Lieutenant Ruiz made the decision to maintain the plaintiff on restraint status.

17. Defendant DeGray was not involved in this incident and had no involvement in the decision to maintain the plaintiff on restraint status.

18. At approximately 4:00 p.m. on March 5, 1999 Lieutenant Oglesby (with an extraction team) took the plaintiff off of restraint status.

19. Defendant DeGray had no involvement in the decision to release the plaintiff from restraint status.

20. Defendant DeGray was not involved in the removal of the plaintiff from restraint status.

## VI.   PLAINTIFF'S CONTENTIONS

Plaintiff's contentions are set forth in his trial memorandum.  Presumably, the plaintiff alleges that his placement and continuation in restraints violated his right to be free from the use of excessive force as guaranteed by the Eighth Amendment to the United States Constitution.

## VII.   DEFENDANT'S CONTENTIONS

Defendant DeGray denies the plaintiff's allegations on a number of grounds, legal and factual.  First, the evidence demonstrates that the decision to place the plaintiff into four point restraints on March 4, 1999 was not made by defendant DeGray, as is the premise of the plaintiff's claim.  Rather, the decision to place the plaintiff into restraints was made by Major Lajoie following his interaction with the plaintiff where the plaintiff indicated that he intended to do harm to himself.  Additionally, the evidence demonstrates that defendant Captain DeGray had

4

very limited interaction with the plaintiff while the plaintiff was in restraints.  As a result, defendant DeGray should be entitled to judgment as a matter of law due to a lack of personal involvement in the alleged constitutional deprivation.  Also, assuming arguendo that defendant DeGray was sufficiently involved in the plaintiff's placement and continuation in restraints, the evidence demonstrates that the plaintiff's placement into restraints (and continuation in restraint status) was reasonable and justified under the circumstances.  Therefore, the plaintiff cannot assert a viable constitutional claim.  Finally, at all times pertinent to this incident, there is no evidence that defendant DeGray acted in an objectively unreasonable manner.  Therefore, defendant DeGray would be entitled to qualified immunity from all of the plaintiff's claims.

## VIII.  LEGAL ISSUES

A.     Whether defendant DeGray had the requisite personal involvement in the alleged constitutional deprivation.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

B.     Whether the placement of the plaintiff into restraints, and continuation of the plaintiff in restraints, was force used in a good faith effort to maintain or restore discipline, or, maliciously and sadistically to cause harm.  See Hudson v. McMillan, 503 U.S. 1, 177 L.Ed.2d 156, 113 S.Ct. 995 (1992).

C.     Whether the defendant acted within the scope of his Qualified Immunity under federal law.  See Saucier v. Katz, 533 U.S. 194, 150 L.Ed.2d 272, 121 S.Ct. 2151 (2001).

IX.   **VOIR DIRE QUESTIONS**

See attached.

X.    **WITNESSES**

The defendant anticipates calling the following witnesses. The defendant expressly reserves the right to supplement this list in response to plaintiff's testimony and/or evidence submission.

1. Defendant Captain DeGray will testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff. Defendant DeGray may also testify generally about DOC policies and procedures concerning the use of force on inmates and the use of restraints.

2. Warden Lajoie will testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff. Warden Lajoie may also testify generally about DOC policies and procedures concerning the use of force on inmates and the use of restraints.

3. Lieutenant Jose Ruiz will testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff. Lieutenant Ruiz may also testify generally about DOC policies and procedures concerning the use of force on inmates and the use of restraints.

4. Correctional Officer Roger Smith may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

5. Correctional Officer Rich Warner may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

6

6. Correctional Officer Pete Castonguay may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

7. Nurse Barbara Savoie may testify as to her knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

8. Lieutenant Dennis Oglesby may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff. Lieutenant Oglesby may also testify generally about DOC policies and procedures concerning the use of force on inmates and the use of restraints.

9. Correctional Officer Guzik may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

10. Correctional Officer M. Deary may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

11. Correctional Officer Stucenski may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

12. Correctional Officer R. Jones may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

13. Correctional Officer D. Dardanelli may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

14. Correctional Officer Evan Carrara may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

15. Correctional Officer Lamel Smith may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

16. Warden Larry Myers may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff. Warden Myers may also testify generally about DOC policies and procedures concerning the use of force on inmates and the use of restraints.

17. Correctional Officer Edward Busher may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

18. Correctional Officer D. Curtis may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

19. Correctional Officer R. Pino may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

20. Correctional Officer E. Purvis may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

21. Correctional Officer Gene Hollingworth may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

22. Correctional Officer David Huffman may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

23. Medic Reginald McAllister may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

24. Registered Nurse Michael Lyman may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

25. Registered Nurse R. Bernard may testify as to his knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

26. Registered Nurse Nancy Hill may testify as to her knowledge of and involvement in the incident(s) of March, 1999 involving the plaintiff.

## XI. **EXHIBITS**

See attached Exhibit List.

## XII. **DEPOSITION TESTIMONY**

There have been no depositions in this case. The plaintiff has been deposed by the undersigned in another pending District Court case, <u>Ziemba v. Armstrong, et al.</u>, 98CV2344 (JCH). If indicated, the defendant will use that deposition testimony to impeach plaintiff's testimony at trial.

## XIII. **REQUEST FOR JURY INSTRUCTIONS AND PROPOSED VERDICT FORM**

See attached.

## XIV. **ANTICIPATED EVIDENTIARY PROBLEMS**

None.

## XV. **TRIAL TIME**

Provided the plaintiff limits his testimony and evidentiary offerings to the sole issue remaining for trial, the complete trial should require no more than three days.

DEFENDANT
Kevin DeGray

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____/s/_____
Matthew B. Beizer
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct16304
E-Mail: matthew.beizer@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following this 27th day of February, 2006:

Duane Ziemba #128963
Garner Correctional Institution
50 Nunnawauk Road
P.O. Box 5500
Newtown, CT 06470

_____/s/_____
Matthew B. Beizer
Assistant Attorney General